No. 22396.

JOHN J. GIBBONS *v.* MARY CHOURY.
(455 P.2d 649)

Decided June 9, 1969.    Opinion modified and as modified
rehearing denied June 23, 1969.

Zarlengo, Mott & Carlin, Albert E. Zarlengo, Jr., for plaintiff in error.

Levi Martinez, Charles S. Vigil, for defendant in error.

*In Department.*

Opinion by Mr. Chief Justice McWilliams.

This is a personal injury case arising out of an automobile collision wherein one Mary Choury and John Gibbons were the drivers of the two vehicles involved in the accident. The accident occurred in the intersection of 48th Avenue and Federal Boulevard in Denver. Choury was proceeding in a northerly direction on Federal Boulevard approaching 48th Avenue when Gibbons, who had been proceeding in a southerly direction on Federal Boulevard, made a left-hand turn at 48th Avenue where the two cars collided. As a result of this incident Choury made claim against Gibbons, who denied liability and asserted a counterclaim. Trial by jury culminated in a verdict in favor of Choury and against Gibbons in the sum of $12,000, and by this writ of error Gibbons now seeks reversal of the judgment thereafter entered on the verdict of the jury.

The principal issue posed by this writ of error concerns the size of the verdict. Gibbons contends that

the $12,000 verdict is excessive and so "obviously disproportionate" to the injuries sustained as to indicate that the jury was influenced "by partiality or prejudice or was misled by some mistaken view of the merits of the case." As a corollary, it is also contended that certain instructions relating to damages, though correct statements of the law, should nevertheless not have been given the jury because they were not warranted by the facts. More specifically, it is said that there was simply no evidence as to any lost earnings prior to trial, and similarly that there was no evidence as to any impairment of future earning capacity. Our study of the record, however, leads us to conclude that though the size of the jury's verdict may perhaps seem to some to be a bit generous, yet we are of the view that the alleged largess is not of such proportion as would justify us in setting it aside. If we are to set aside every verdict that may seem to us to be a bit high, then by the same token we should also set aside those verdicts that may from time-to-time strike us as being niggardly. And then the courts, and not juries, would for all practical purposes be in effect fixing the dollar amount in all personal injury cases. On the contrary, Colorado has long been committed to the rule that a verdict of a jury in a personal injury case is not to be set aside unless the damages awarded are grossly and manifestly excessive, or, on the other hand, are grossly and manifestly inadequate. See *Odell v. Public Service Co.* 158 Colo. 404, 407 P.2d 330; *Moseley v. Lamirato*, 149 Colo. 440, 370 P.2d 450; and *Lehrer v. Lorenzen*, 124 Colo. 17, 233 P.2d 382. Let us now briefly examine Choury's evidence bearing on the general issue of damages.

Choury's so-called out of pocket expense for doctors, drugs, and the like was $150. According to the pre-trial order, Choury "reserved" the right to offer as an exhibit an estimate for the cost of repairs to her damaged vehicle in the amount of $406.52. However, our review of the record fails to reveal that Choury upon trial ever offered

any evidence pertaining to the cost of repairing her damaged automobile.

As concerns the nature and extent of her physical injuries, Choury testified that as a result of being thrown around her car when it collided with the Gibbons vehicle, she sustained injury to her left hand, her neck and low back. She testified at some length concerning the pain and suffering experienced by her immediately after the accident, which pain and suffering according to her was considerable and persisted as of the very moment she testified.

An expert witness testified that in his opinion as a result of the accident Choury did sustain an injury to her neck, which he diagnosed as being a "chronic sprain, cervical spine." This doctor elaborated a bit by stating that by using the word "chronic" he intended to mean "that it is going on for a long time."

Another doctor testified concerning the injury sustained by Choury in the accident to her "low back." It should be noted that Choury candidly admitted that she first sustained an injury to her low back some two months before the accident here in question, and it was her position that she aggravated her injury to the low back in the automobile accident. The examining physician testified that in his opinion Choury had in fact aggravated the disability in her low back in the automobile accident. He then went on to state that as concerns the low back condition, Choury had a disability amounting to "2% as a working unit," of which "not more than 1%" was attributable to the automobile collision.

As above noted, Choury herself testified concerning the nature and extent of her pain and suffering, which she said interfered with her ability to perform normal household chores. In this connection, according to Choury, it became necessary for her to hire domestic help for about two hours per week. The testimony was that the rate of pay for such help was approximately $1.50 per hour, which expense would be $3.00 per week.

Using this as the base figure, the future expense for domestic help, *i.e.*, not including the amount already actually expended for such help, on the basis of 50 weeks per year for 28 years, which was the life expectancy of Choury, would be some $4,200.

As above indicated, much of the argument advanced by Gibbons concerning the amount of damages awarded Choury by the jury concerns the related issues of lost earnings, if any, incurred prior to the trial and the impairment, if any, of Choury's future earning capacity. Gibbons contends that there was no evidence brought forward by Choury bearing on these matters and hence the instructions relating to loss of earnings and impairment of future earning capacity, though proper in form, under the circumstances should not have been given the jury.

Choury was a college graduate, the possessor of an A.B. degree, and qualified to teach Spanish. At the time of the accident she was living in Denver and commuting on a more-or-less daily basis to the University of Colorado in Boulder, where she was a part-time instructor. At the same time she had also embarked on a two year course of graduate study designed to earn for herself not only a Master's degree but also a Doctor's degree. However, because of what she described as her unbearable and continuing pain resulting from the accident, Choury testified that she eventually had to discontinue her graduate study program at the University of Colorado and that in so doing she thereby "delayed" the dates when she would otherwise have been awarded her Master's and Doctor's degrees. In connection therewith Choury also testified that after abandoning her program of graduate study at the University of Colorado she then obtained employment as a Spanish teacher "without having the Master's or Ph. D." The case did not come on for trial till nearly four years after the date of the accident, by which time Choury by attending summer school had just received her Master's degree and was

well on the road to her Doctorate. The net effect of Choury's testimony in this regard was that but for the accident she would have completed her graduate studies within two years from the date of the accident, and then would have been receiving more in the way of salary than she was able to command with her A.B. degree. Testimony was offered as to the salary which went with the A.B. degree, as opposed to the salary paid a Spanish teacher possessing a Master's degree or a Doctor's degree. All of this, according to Choury, reflected itself in some loss of income prior to trial and in some impairment in her future earning capacity, which impairment could continue till she actually received her Doctorate.

■ As previously noted, Gibbons claims that the evidence which has just been summarized was insufficient to warrant any instruction concerning loss of earnings or impairment of future earning capacity. In thus arguing Gibbons relies to a considerable degree on *Klimkiewicz v. Karnick*, 150 Colo. 267, 372 P.2d 736. It is quite true that in that case we did hold that testimony as to the salary which a Master's degree would command, as opposed to that which went with an A.B. degree, was improper and prejudicial where there was no evidence that the plaintiff was even seeking a Master's degree. Such is a far different situation, however, from that of the instant case, where at the time of the accident Choury was already embarked on a definite course of study leading up to her obtaining both a Master's degree and a Doctor's degree within two years. And according to Choury, the injuries which she sustained in the accident here under consideration necessitated an abandonment of this program of study. Suffice it to say we conclude that Choury did introduce sufficient evidence of diminished earnings prior to trial, as well as impaired future earning capacity, to warrant an instruction concerning these related matters.

■ Separate and apart from the issue of damages, Gibbons complains about two other instructions given

the jury. One such instruction related to a so-called "sudden emergency" and the other set forth the Denver municipal ordinance relating to how a left-hand turn should be made. Again, Gibbons concedes that the instructions were proper, insofar as content is concerned, but he argues that in each instance the evidence did not justify the giving of such an instruction. Without belaboring the point, our review of the record convinces us that there was some evidence that Gibbons who made a left-hand turn in front of Choury was "cutting" the corner and that Choury was faced with a "sudden emergency" to the end that giving an instruction on each of these particular matters was not improper.

Minor complaint is also made about certain testimony of a police officer who investigated the accident. He was called as a witness by Choury and upon direct examination related the statement made by Gibbons to him in the presence of Choury, the gist of which was that he (Gibbons) proceeded into the intersection on the green light. Over objection, the officer then related what Choury told him, the gist of which was that she too claimed to have proceeded into the intersection on a green light. This statement is attempted to be justified on the basis of res gestae. The record before us is too sketchy to indicate whether this was or was not a res gestae situation. Be that as it may, if this be error, it is certainly not such as would justify a reversal of the case. In the first place, the sequence of the signal lights at this particular intersection was such that *if* the light was green for Gibbons, as he claimed it was, then it *had* to be green for Choury. For this and other reasons, this particular point is not deemed to be a matter of any great moment.

The central issue in this case is whether the damages awarded by the jury were excessive. Based on our study of the record, the figure set by the jury would appear to be a bit high, but it is not such a situation as

274

would warrant us, or the trial court, to overturn the jury's verdict.

Judgment affirmed.

MR. JUSTICE DAY, MR. JUSTICE HODGES and MR. JUSTICE LEE concur.