CHERRY CREEK SCHOOL DISTRICT
#5; Victoria Anne Timm, f/k/a Vicky
Vosbeck; and Chris Walling, Petition-
ers,

v.

Jennifer J. VOELKER, a minor by her
next friends, Gary E. and Shirley A.
VOELKER; and Gary E. Voelker and
Shirley A. Voelker, Respondents.

No. 92SC444.

Supreme Court of Colorado,
En Banc.

Sept. 27, 1993.

Rehearing Denied Oct. 25, 1993.

Watson, Nathan & Bremer, P.C., J. Andrew Nathan, Christina M. Habas, Denver, for petitioners Cherry Creek School Dist. No. 5 and Victoria Anne Timm.

Long and Jaudon, P.C., Dennis W. Brown, Thomas C. Kearns, Denver, for petitioner Chris Walling.

Gary T. Cornwell, The Woodlands, TX, for respondents.

Chief Justice ROVIRA delivered the Opinion of the Court.

We accepted certiorari to review the court of appeals decision in *Voelker v. Cherry Creek School District No. 5*, 840 P.2d 353 (Colo.App.1992), which held that the trial court abused its discretion in denying respondents' request to have a preservation video deposition taken, or alternatively, in refusing to grant them a continuance until the deposition could be taken. The court of appeals also concluded that respondents should have been allowed to introduce certain statutes and regulations showing that one of the petitioners was not certified to teach middle school students. We reverse and remand with directions.

I

This litigation arises out of two incidents in which respondent Jennifer Voelker was struck in the head while attending West Middle School, Cherry Creek School District No. 5. The first incident occurred on October 3, 1983, when a textbook was thrown at petitioner Chris Walling. Walling ducked and the book flew over him striking Voelker in the head. This incident occurred immediately preceding the math class taught by petitioner Vicky Timm, who was not in the classroom when the incident occurred. The second incident occurred on December 5, 1984, when Voelker was struck on the back of the head by a volleyball during volleyball practice.

The injuries allegedly resulting from these incidents involved damage to Voelker's inner ear—causing persistent dizziness, vertigo, imbalance, and nausea.[1]

---

**1.** Respondents presented testimony that the two head blows caused inner ear disorders—perilymph fistulas, benign paroxysmal positional nystagmus, and endalymphatic hydrops—

Respondents filed suit on October 3, 1986, asserting negligence claims against Walling (due to his involvement in the book throwing incident), negligent supervision claims against Cherry Creek School District No. 5 (from both the book and the volleyball incidents), and Timm (due to her alleged absence prior to, and for a period of time after, the time designated for the teaching and supervision of the math class). Several other defendants were named, but have subsequently been dismissed from the suit.[2]

Respondents claimed that Voelker's medical condition prevented her from traveling out of state to participate in discovery. Consequently, counsel for petitioners traveled to Portland, Oregon, where Voelker had moved following the incidents, to take her deposition on August 10 and 11, 1989, and again on February 19, 1990. Because of Voelker's condition, she was unable to testify for significant periods of time and her frequent rest breaks prolonged the time required to complete her deposition.

The jury trial was set approximately one year in advance, with the trial scheduled to begin on April 16, 1990. On February 19, 1990, Walling moved for a continuance because his college final exams were to take place during the trial. Respondents "strenuously" objected to a continuance, asserting that "they [would] be severely prejudiced if such a continuance [was] granted." In urging that Walling's motion should be denied, respondents noted the difficulty and cost in re-scheduling their expert witnesses; their increased legal expenses; the continuing cost of medical and living expenses; and the difficulty in re-scheduling the trial in the near future. Moreover, respondents noted that Walling had failed to show what efforts had been undertaken to reschedule his examinations. Finally,

respondents noted that Walling "should have foreseen such a potential conflict," because he knew of his final exam schedule well before trial. Ultimately, the trial court denied Walling's motion, noting that if the case were to be continued the next available trial date would be in late 1991.

On March 16, 1990, the day discovery ended by court order, respondents filed a motion for enlargement of time to conduct depositions, in particular the preservation deposition of Voelker. Such a deposition was necessary because the "vestibular disorders resulting from the incidents which are the subject matter of this lawsuit," rendered Voelker unable "to travel to Denver, Colorado for the April 16, 1990, trial date." Cherry Creek and Timm objected, arguing that because Voelker required frequent breaks, the deposition could take several days and would have to be conducted in Portland, Oregon. They concluded that these facts, coupled with the impending trial date, would render it difficult to schedule the deposition and that it would likely interfere with their trial preparation. Finally, they noted that Voelker's 391 page discovery deposition was available for the preservation of her testimony.

Prior to the court ruling on the motion for an enlargement of time, respondents issued a notice of deposition for the preservation of Voelker's testimony stating that the videotaped deposition would take place on April 9 and 10, 1990. Pursuant to C.R.C.P. 26(c), petitioners moved for a protective order. As grounds for the order, they argued that the respondents had known of Voelker's physical limitations since the trial setting and that they had given no valid reason why arrangements for the deposition had not been made earlier. Petitioners also argued that the late date of the request unfairly burdened their

---

temporomandibular joint syndrome, cervical soft tissue injuries resulting in cervical radiculopathy, and psychiatric and psychological problems. The trial court noted that: "The inner ear disorders which plaintiffs allege Jennifer Voelker sustained were compound and complex and literally on the cutting edge of medical technology."

**2.** These defendants include Dake Schmit, who threw the text book, Ruth Lucius (a physical education instructor who allegedly required Voelker to run a mile after the book incident, and failed to adequately supervise the volleyball practice), and Lia Clark (the alleged server of the volleyball who served the ball "from an unreasonably dangerous spot directly behind a line of other students").

ability to prepare for trial, and that it would be inconvenient, expensive, burdensome, and prejudicial. Finally, petitioners again noted the existence of Voelker's 391 page discovery deposition transcript.

At a hearing held ten days before the trial was scheduled to begin, the trial court requested the respondents to describe the circumstances that supported ordering a preservation deposition that close to trial. Respondents' attorney, Mr. Lenyo, replied as follows:

> Well, Your Honor, I don't know if there's specific authority as to the timing. I don't think that there is any question that in a situation like this where we have an injured party who is unable to attend the trial that in order to present their testimony we can preserve it through a videotape presentation.
>
> So the question is what is really the circumstances why we are forced to be doing this one week before trial.
>
> THE COURT: You tell me those circumstances.
>
> MR. LENYO: Okay, Your Honor, as I stated, the Plaintiff's injuries at this point do not permit her to travel from Portland to Denver, Colorado.
>
> THE COURT: When did you determine that?
>
> MR. LENYO: Your Honor, we've known that all along. However,—
>
> THE COURT: Since when? Are we talking '85, '86 or '87?
>
> MR. LENYO: I've known it, but she is under constant care. She has—
>
> THE COURT: Answer my question.
>
> MR. LENYO: I don't know. Until recently, until—for sure within the last two weeks when Dr. Black did his most recent examination.... That's when I ultimately knew whether or not she could not come.

> . . . . .

I don't want to represent to the Court that I didn't have any idea that this wasn't going to happen, but I was waiting for that final examination by Dr. Black to confirm it.

Respondents' counsel gave no reason why the deposition had not been scheduled earlier. The trial court granted the motion for protective orders, reasoning that the motion was made on the "eve of the trial" after the date all discovery was to end.

Immediately after the trial court granted petitioners' motion, respondents requested a continuance of the April 16th trial date. They asserted that the continuance would enable them to conduct a preservation videotape deposition, or alternatively, if Voelker's condition improved, enable Voelker to travel to Denver to testify in person at the re-scheduled trial.[3] Petitioners objected, citing the inconvenience and prejudicial effect of delaying the trial. As with Walling's requested continuance, the trial court denied the motion.

The eighteen day jury trial commenced, as scheduled, and after several breaks, concluded on May 16, 1990. Voelker's 391 page deposition was read into evidence at various times throughout the trial. The jury returned a verdict in favor of the defense, and judgment was entered on the verdict. According to the special verdict form, the jury found that respondents had suffered injuries; however, it found no negligence on the part of any defendant. Following trial, the petitioners submitted a bill of costs.

Noting the complexity of the case and the amount of damages at issue,[4] the court found that discovery depositions were "an integral part of the preparation for trial" and that they "were a necessity for the proper preparation for trial and for the orderly and efficient presentation of evidence and cross-examination of witnesses." The court concluded that "it [had] inherent and discretionary authority to award the

---

**3.** However, as respondents' counsel conceded during oral argument, "[w]e always knew that there was no realistic probability that Jennifer would make it to trial."

**4.** Prior to trial, respondents' demand for settlement against defendants Cherry Creek and Timm was $11,000,000.

costs of taking [out of state witness] depositions pursuant to C.R.S. § 13–16–122 and in particular subsection (1)(d) of that statute." Accordingly, because respondents did not dispute the reasonableness of the deposition costs, the trial court awarded petitioners virtually all the costs requested.

The court of appeals reversed, holding that the trial court abused its discretion in failing to order that Voelker's preservation deposition be taken prior to trial. It also held that if this would have created prejudicial hardship to the petitioners, the trial court erred in not granting a continuance ·so the deposition could be taken. Because the court ordered a new trial, it did not reach the issue of whether the trial court abused its discretion in awarding costs.

## II

With respect to the preservation deposition and the continuance, petitioners argue that the court of appeals impermissibly substituted its judgment for that of the trial court. We agree.

 It is well settled that the decision of whether to grant a continuance is left to the sound discretion of the trial court, and its decision in such matters will not be disturbed absent a clear showing of an abuse of discretion. *Butler v. Farner,* 704 P.2d 853, 858–59 (Colo.1985). In making this determination, the trial court should consider "the circumstances of the particular case, weighing the right of the party requesting the continuance to a fair hearing against the prejudice that may result from delay." *Id.* The right to a fair hearing generally grants "a litigant ... the right to be present to assist his counsel in the trial." *Rausch v. Cozian,* 86 Colo. 389, 390, 282 P. 251, 252 (1929). Thus, it is well established that the unexpected absence of a party is generally a good reason for granting a continuance. *Gonzales v. Harris,* 189 Colo. 518, 520, 542 P.2d 842, 843–44 (1975); *Gallavan v. Hoffner,* 154 Colo. 353, 390 P.2d 817 (1964); *Rausch,* 86 Colo. at 390–91, 282 P. at 252. *See Lane v. Gooding,* 63 Colo. 324, 327, 166 P. 245, 246 (1917) (recognizing that the sudden unavailability of one of the parties may give rise

to a continuance). However, unlike the parties in *Gonzales, Gallavan, Rausch,* and *Lane,* whose absences from trial were sudden and unexpected, all parties knew, to a virtual certainty, that Voelker would be ·unable to attend trial in Colorado. As respondents candidly acknowledge, the request for a continuance was intended to enable them to secure Voelker's videotaped deposition. Only in this manner, they assert, would the Voelkers be able to adequately present their case.

 Thus, as the court of appeals recognized, respondents' right to a continuance is determined by their right to a video preservation deposition:

> [T]he trial court abused its discretion in not ordering that the video preservation deposition of plaintiff be taken before the trial, or, if taking a video deposition at the time would have created a prejudicial hardship to defendants, then it erred in not granting a continuance of the trial date so that the video could be taken at a later time.

*Voelker v. Cherry Creek School Dist. No. 5,* 840 P.2d 353, 355 (Colo.App.1992). We disagree. The trial court neither abused its discretion in prohibiting the video preservation deposition nor in denying respondents' motion for a continuance.

With respect to the respondents' right to a video deposition the court of appeals stated:

> [T]he [trial] court's refusal, under the facts here, to permit the video deposition effectively denied this plaintiff her day in court. While a videotape deposition may not as effectively present the testimony of a party who could testify in person, it is far better than an adversarial "discovery" deposition or even a traditional testimonial deposition. It allows the factfinder to observe demeanor and thereby better determine credibility disputes, and allows an ill party to present his or her case in a logical, explanatory, and effective manner.

*Id.* at 355–56. While a videotaped deposition is probably a more effective method of presenting testimonial evidence than the

reading of an adversarial deposition, no party has an absolute right to a video deposition. Such a deposition, while it may be desirable under certain circumstances, is a luxury not a necessity, *see Dorrance v. Family Athletic Club*, 772 P.2d 667, 668 (Colo.App.1989), and absent agreement between the parties, it is up to the trial court to determine, in its discretion, whether such a deposition will be ordered. *See* C.R.C.P. 30(b)(4) (providing that "the court may upon motion order that the testimony at a deposition be recorded by other than stenographic means...."). *See also* C.R.C.P. 32(a)(3) (where witness is unavailable, the deposition of a witness may be used for any purpose).

▇▇▇ The trial court is in the best position to balance the needs of the parties with the prejudicial impact of a discovery request. In this balancing, a trial court should recognize that a discovery deposition is generally composed of leading questions and thus may not be the most effective method of presenting a party's case. Against the desire of parties to present their case in the most effective manner, the trial court must examine the prejudice, if any, to the other parties. Under normal circumstances, the burden of delay will be slight and requests for video depositions may be granted as a matter of course. Moreover, where the absence is sudden and unexpected, generally the right of the parties effectively to present their case will weigh heavily in favor of a video deposition. *See Gonzales*, 189 Colo. at 520–21, 542 P.2d at 844; *Gallavan*, 154 Colo. at 356, 390 P.2d at 818. Here, as conceded by respondents, Voelker's absence was neither sudden nor unexpected.

Where, however, the request comes on the eve of trial, the burden and prejudicial impact become greater—discovery will interfere with the preparation for trial. Our rules of civil procedure recognize this prejudice by mandating discovery termination thirty days prior to trial. *See* C.R.C.P. 16(f). Although a continuance would minimize this prejudice, its burden can also be excessive, especially in complex cases such as this. As respondents noted in their ar-

gument to deny Walling's motion for a continuance, if a continuance was granted, the parties would experience difficulty in rescheduling their expert witnesses, difficulty in resetting the trial, and would incur the costs of continuing legal expenses. Both requests involved the exercise of discretion by the trial court. In view of the prejudicial impact of the requests, we hold that the trial court did not abuse its discretion. Any other conclusion would amount to the substitution of our judgment for that of the trial court.

In fashioning a remedy that would minimize the prejudice to petitioners, the court of appeals suggested that

> the trial court, merely by starting this month-long trial a day or two later, could have accommodated the interest of the plaintiff in providing her testimony through a videotape and the interest of defense counsel in adequately preparing for trial. Since the video testimony was in lieu of trial testimony much of the time involved with it was in reality trial and not discovery time.

*Voelker*, at 356. However, the parties in this case did not request a delay, or continuance, of one or two days—no alternative was offered except vacating the trial date and rescheduling it.

Under the facts of this case, the trial court did not err in granting petitioners' motion for a protective order, nor did the trial court err in refusing respondent's motion for a continuance.

## III

Petitioners next argue that the court of appeals erred in concluding that certain statutes and regulations concerning Timm's qualifications to teach middle school were admissible.

At trial, both Timm and Vern Moser, an assistant principal at West Middle School, testified that Timm's teaching certification covered kindergarten through eighth grade. Thus, they testified that she was certified to teach middle school students. In response, respondents offered two exhibits which they asserted would demon-

strate that Timm was not certified to teach middle school.[5] Although the trial court found the exhibits to be technically relevant under CRE 401 and 402, it excluded them because of the collateral nature of the issue.[6]

The Colorado Rules of Evidence grant trial courts the discretionary authority to exclude relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403. *See Campbell v. People*, 814 P.2d 1, 8 (Colo.1991). In exercising its discretion under Rule 403, a trial court "must consider the probative value of the proposed evidence ... in light of the nature of the case, the nature of the offered evidence, and the other evidence admitted during the trial." *People v. Rubanowitz*, 688 P.2d 231, 245 (Colo.1984). *See Williamsen v. People*, 735 P.2d 176, 183 (Colo.1987) (where probative value of offered evidence was slight, and evidence was offered only for impeachment, trial judge did not abuse his discretion in excluding evidence when he was concerned about the introduction of collateral issue into the trial).

Petitioners argue that the offered exhibits were collateral because whether Timm was certified to teach middle school students does not have any bearing on whether she was negligent in being absent from the room during the book throwing incident. We, however, assume that the trial court's finding of technical relevance was correct[7]—but a finding of relevance alone does not mandate reversal. Rather, only if the trial court abused its discretion in ex-

cluding the evidence will its exclusion of evidence be reversed on appeal.

Here, the probative value of the evidence is slight—the absence of proper certification has little to do with Timm's supervision of the class, and respondents are not asserting that it was illegal for Timm to teach middle school. Additionally, petitioners asserted that if the exhibits were admitted, they would have to present testimony from several witnesses on the issue of certification, raising concerns of undue delay in this already lengthy trial. To the extent Timm's background and experience were probative of her supervision of the class, the trial court could properly be concerned with the needless presentation of cumulative evidence. For example, respondents introduced evidence that Timm's educational background, teaching experience, and field experience were all in the area of elementary education. Finally, to the extent the evidence was offered to impeach the testimony of Timm and Moser, the trial court would have been justifiably concerned about the introduction of collateral issues into the trial. *See Williamsen*, 735 P.2d at 183. Accordingly, we cannot conclude that the trial court abused its discretion in rejecting the exhibits.

Even if we were to find that the trial court abused its discretion, we are of the opinion that such exclusion does not warrant a new trial in this matter.

The erroneous exclusion of evidence will result in a reversal only if the exclusion affected a substantial right of a party. This proposition is simply a recognition of the fact that minor mistakes inevitably occur in the course of a trial since a perfect trial is more often than not a

---

5. The offered exhibits reprint several sections from the Teacher Certification Act of 1975, §§ 22-60-101, -102, -103(4) and (5), -104, and -109, 9 C.R.S. (1988), as well as several rules adopted by the State Board of Education, 1 Colo.Code Regs. 301-15, §§ 4.0 through 4.10.

6. Specifically, the court ruled: "[I]n balancing admissibility versus the confus[ing and] misleading nature of the evidence, [as well as] considerations of undue delay, the court will not allow the offer of the exhibits...."

7. If the exhibits are probative of no material issue, then they were properly excluded. "[G]enerally, extrinsic evidence is not admissible to contradict the testimony of a witness on a collateral matter." *Bishop v. People*, 165 Colo. 423, 428, 439 P.2d 342, 344-45 (1968). *See Banek v. Thomas*, 733 P.2d 1171, 1178 n. 7 (Colo. 1986).

virtual impossibility. *Callis v. People,* 692 P.2d 1045, 1053 (Colo.1984); *People v. Taylor,* 197 Colo. 161, 164, 591 P.2d 1017, 1019 (1979).

*Banek v. Thomas,* 733 P.2d 1171, 1178 (Colo.1986) (citations omitted). *See* C.R.C.P. 61 ("No error in ... the exclusion of evidence ... is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with substantial justice."); CRE 103 ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...."); C.A.R. 35(e) (appellate court shall disregard any error or defect not affecting the substantial rights of the parties). Exclusion affects a substantial right of a party where "it can be said with fair assurance that the error influenced the outcome of the case or impaired the basic fairness of the trial itself." *Banek,* 733 P.2d at 1178. Examination of the record demonstrates that the exclusion of this evidence did not affect a substantial right of a party. As noted above, respondents were able to establish that Timm's educational background, teaching experience, and field experience were in the area of elementary education rather than middle school. Accordingly, no new trial may be premised on the exclusion of this evidence, erroneous or not.

## IV

Petitioners urge that the trial court's award of discovery costs be upheld. The trial court awarded them $32,054.46 as costs against respondents. Respondents object to the award of expenses incurred taking discovery depositions, including travel expenses, prior to trial—specifically $24,867.42. None of these depositions was taken for the purpose of perpetuating testimony. Finally, respondents urge that an award of $432.50 of costs for surgical videotapes should not have been taxed as costs because the tapes were not utilized at trial.

The substance of respondents' argument is that a trial court may award only those costs enumerated in section 13–16–122, 6A C.R.S. (1987). Moreover, they urge that the expenses associated with the taking of discovery depositions are not allowable as items of cost. In support of this proposition they rely on *Morris v. Redak,* 124 Colo. 27, 41, 234 P.2d 908, 915 (1951) (the taking of depositions is a luxury, and "one who avails himself of this procedure does so at his own expense"), *Brakhage v. Georgetown Associates, Inc.,* 33 Colo.App. 385, 389, 523 P.2d 145, 147 (1974) (expenses of taking a deposition are normally not allowed as costs), and *Schultz v. Linden-Alimack,* 734 P.2d 146, 150 (Colo.App.1986) ("Expenses of taking depositions prior to trial, even of expert witnesses, are normally not allowed as items of costs" unless they are for the perpetuation of testimony). *See also Weber v. Wallace,* 789 P.2d 427, 430 (Colo.App.1990), *cert. denied,* (March 5, 1990) (depositions taken for ordinary discovery purposes are not awardable because they are not provided for in section 13–16–122).

Section 13–16–122, 6A C.R.S. (1987), provides:

**Items includable as costs.** (1) Whenever any court of this state assesses costs pursuant to any provision of this article, such costs may include:

(a) Any docket fee required by article 32 of this title or any other fee or tax required by statute to be paid to the clerk of the court;

(b) The jury fees and expenses provided for in article 70 of this title;

(c) Any fees required to be paid to sheriffs pursuant to section 30–1–104, C.R.S.;

(d) Any fees of the court reporter for all or any part of a transcript necessarily obtained for use in this case;

(e) The witness fees, including subsistence payments, mileage at the rate authorized by section 13–33–103, and charges for expert witnesses approved pursuant to section 13–33–102(4);

(f) Any fees for exemplification and copies of papers necessarily obtained for use in the case;

(g) Any costs of taking depositions for the perpetuation of testimony, including

reporters' fees, witness fees, expert witness fees, mileage for witnesses, and sheriff fees for service of subpoenas;

(h) Any attorney fees, when authorized by statute or court rule;

(i) Any fees for service of process or fees for any required publications;

(j) Any item specifically authorized by statute to be included as part of the costs.

Recently, in *Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936 (Colo.1993), we considered whether the list of expenses awardable under section 13–16–122 is exclusive. There, we explored whether contractually authorized attorney fees were awardable as costs, rather than as damages. As a separate and independent ground for upholding the judgment of the county court we held that:

> The list of expenses that may be awarded as costs under section 13–16–122, however, is illustrative and not exclusive. *Church v. American Standard Ins. Co. of Wisconsin*, 764 P.2d 405, 406 (Colo. App.1988). In general, absent a specific prohibition, the trial court has discretion over the awarding of costs. *Id.; see Rossmiller v. Romero*, 625 P.2d 1029, 1030 (Colo.1981).

*Ferrell*, 848 P.2d at 940. We rejected the argument that section 13–16–122(1)(h)'s qualification of attorney's fees to those "authorized by statute or court rule" rendered only those fees recoverable. Thus, because the attorney fees could have been awarded as costs, we held that the county court retained jurisdiction over the controversy despite an award of damages and costs in excess of its jurisdictional limitation.

Respondents' argument is similar to the rejected argument in *Ferrell*. They urge that by specifying the categories of deposition fees which are includable as costs, § 13–16–122(1)(g), the legislature has excluded all those categories not expressly provided in the statute. In other words, discovery depositions are not included within the statute, and therefore, they are not includable as costs.

The legislative title of section 13–16–122 describes its scope as "[i]tems *includable* as costs" (emphasis added), and subsection (1) clearly states that "such costs may include" the items described. A statutory definition of a term as "including" certain things does not restrict the meaning to those items included. *See* 73 Am.Jur.2d *Statutes* § 212, at 406 (1974). Rather, "the word 'include' is ordinarily used as a word of extension or enlargement.... To hold otherwise would transmogrify the word 'include' into the word 'mean.'" *Lyman v. Bow Mar*, 188 Colo. 216, 222, 533 P.2d 1129, 1133 (1975). *See Exxon Corp. v. Lujan*, 730 F.Supp. 1535, 1545 (D.Wyo.1990) (the use of the word "includes" rather than the word "means" in a regulatory definition indicates that what follows is a non-exclusive list which may be enlarged upon). Thus, as in *Ferrell*, we again conclude that the list of items awardable as costs in section 13–16–122 is illustrative rather than exclusive.

Being regarded as a "luxury," the expenses incurred in taking discovery depositions traditionally have not been allowed as costs. *See supra* p. 812. Given the complexities of contemporary litigation, however, the federal courts have recognized that discovery depositions can be an important component of effective trial preparation. Accordingly, they have allowed the expenses incurred in taking discovery depositions to be awarded as costs where the taking of the deposition and its general content were reasonably necessary for the development of the case in light of facts known to counsel at the time it was taken. *See Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237 (7th Cir.1985); *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983); *Koppinger v. Cullen–Schiltz & Assocs.*, 513 F.2d 901 (8th Cir.1975); and *Bruno v. Western Elec. Co.*, 618 F.Supp. 398 (D.C.Colo.1985), *aff'd in part, rev'd in part, and remanded on other grounds*, 829 F.2d 957 (10th Cir. 1987). We are of the opinion that this standard provides appropriate guidance to trial courts in their exercise of discretion when determining whether to award as

costs the expenses of taking discovery depositions.

As noted above, *see supra* pp. 808–809, the trial court found that the discovery depositions were "an integral part of the preparation for trial" and "a necessity for the proper preparation for trial and for the orderly and efficient presentation of evidence and cross-examination of witnesses." These findings are more than sufficient to satisfy the standard adopted above.

The judgment of the court of appeals is reversed. We remand to the court of appeals with directions to reinstate the judgment of the trial court.