Edwin Bruce GEORGE,
Plaintiff–Appellee,

v.

Wade Michael WELCH, Defendant–
Appellant.

No. 98CA1736.

Colorado Court of Appeals,
Div. I.

Nov. 12, 1999.

Certiorari Granted April 24, 2000.

J.J. Vick, Greeley, Colorado, for Plaintiff–Appellee.

Wick Campbell Bramer Ukasick & Trautwein, LLC, Troy A. Ukasick, Kimberly B. Schutt, Fort Collins, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

In this personal injury action, defendant, Wade Michael Welch, appeals the judgment entered on a jury verdict in favor of plaintiff, Edwin Bruce George. We affirm.

Plaintiff and his wife were involved in a multi-vehicle accident in which their car was struck by a car driven by defendant. They sued to recover damages for personal injuries, asserting claims for negligence and negligence *per se* as well as separate claims for loss of consortium.

Shortly after the action was filed, plaintiff's wife settled with defendant. She subsequently separated from plaintiff and moved to another state, but returned to Colorado to testify for plaintiff at trial.

At the conclusion of the trial, the jury returned a verdict in favor of plaintiff, awarding him damages in the amount of $120,000. Defendant's motion for a new trial was denied.

### I.

Defendant first contends that the trial court erred in allowing the jury to consider plaintiff's claim for loss of consortium. We disagree.

Before trial, defendant filed a motion to "preclude any claim or evidence of loss of consortium" at trial. He asserted that the claim was barred by a release executed by plaintiff's wife when she settled. Additionally, he argued that, since plaintiff's loss of consortium claim was derivative of his wife's claims, plaintiff could not prevail because he could not establish that his wife would have met the threshold requirements under the Colorado Auto Accident Reparations Act (No–Fault Act) for bringing suit for her own injuries. The trial court denied the motion.

Plaintiff's wife testified that she was injured in the accident. However, there was no evidence that she needed medical treatment with a value in excess of $2500, as required under the No–Fault Act, § 10–4–714(1)(e), C.R.S.1999. Defendant moved for a directed verdict on the loss of consortium claim on this basis. The court denied the motion and instructed the jury on the elements necessary to establish loss of consortium. The verdict form did not indicate whether the jury found in favor of plaintiff on this claim or whether any portion of its damage award was for loss of consortium.

### A.

Initially, we reject defendant's contention that plaintiff's loss of consortium claim was barred by the release signed by his wife.

A husband's loss of consortium claim arising out of injuries to his wife is separate and distinct from the wife's own claims aris-

ing out of her injuries. *See Crouch v. West*, 29 Colo.App. 72, 477 P.2d 805 (1970).

By settling her own claims against defendant, plaintiff's wife was not thereby releasing defendant from liability as to claims belonging to her husband. Although the release states that it includes "a release of any and all claims for loss of consortium," it is signed only by plaintiff's wife, and contains nothing to indicate that she was authorized to release plaintiff's loss of consortium claim as well as her own. Further, the stipulation filed with the court at the time of settlement stated that the remaining parties understood and acknowledged that plaintiff's claims would not be "affected by, prejudiced, nor compromised in any manner" by the fact of his wife's settlement.

### B.

■ Nor do we agree that, to establish his loss of consortium claim, plaintiff was required to prove that his wife suffered an injury that met the threshold requirements of the No–Fault Act.

The No–Fault Act provides that a person entitled to personal injury protection benefits may not recover for "damages for bodily injury caused by a motor vehicle accident" unless one of certain enumerated threshold requirements is met, including, as pertinent here, a reasonable need for medical services whose value exceeds $2500. Section 10–4–714(1)(e).

■ Although loss of consortium is a personal injury, it is not "bodily injury." *See Lampton v. United Services Automobile Ass'n*, 835 P.2d 532 (Colo.App.1992). Thus, § 10–4–714(1)(e) does not by its terms apply to loss of consortium claims. Defendant nevertheless argues that, because plaintiff's loss of consortium claim is derivative of his wife's bodily injury claim, the same defenses that would apply to her claim—including failure to meet the No–Fault threshold—should apply to plaintiff's loss of consortium claim as well.

■ Contrary to defendant's contention, a claim for loss of consortium is not necessarily derivative for all purposes. *See Rains v.* *Kolberg Manufacturing Corp.*, 897 P.2d 845 (Colo.App.1994).

In *Lee v. Colorado Department of Health*, 718 P.2d 221 (Colo.1986), on which defendant relies, the supreme court held that a wife's claim for loss of consortium was a separate injury within the meaning of the Governmental Immunity Act, but was derivative for purposes of attributing her husband's contributory negligence to her. In analyzing the issue, the court acknowledged that "neither the derivative nor the independent approach is able to resolve all the conceptual problems that a claim for loss of consortium holds out for other areas of the law." *Lee v. Colorado Department of Health, supra*, 718 P.2d at 232. The court observed that it may be appropriate to consider the purpose of the statute at issue in determining whether to treat loss of consortium as an independent or as a derivative claim.

■ Looking to the legislative purpose of the No–Fault Act does not fully resolve the issue presented here. The stated purpose of the Act itself is to avoid inadequate compensation to victims of automobile accidents, *see* § 10–4–702, C.R.S.1999, and the Act is to be construed to further that remedial and beneficent purpose. *Adams v. Farmers Insurance Group*, 983 P.2d 797 (Colo.1999). On the other hand, the purpose of the threshold requirement in § 10–4–714(1)(e) is to keep minor claims from clogging the courts. *See Bushnell v. Sapp*, 194 Colo. 273, 571 P.2d 1100 (1977). Construing plaintiff's loss of consortium claim as derivative of his wife's claim in this case, as defendant urges, would be consistent with the latter purpose but not with the stated goal of the No–Fault Act as a whole.

■ For the reasons set forth below, we conclude that a spouse's loss of consortium claim is not derivative of the other spouse's bodily injury claim for purposes of the threshold requirements of § 10–4–714(1)(e).

First, it is inconsistent with the "remedial and beneficent" purpose of the No–Fault Act to read into its provisions a limitation on accident victims' compensation that is not expressly set forth in the statutory language.

In enacting § 10–4–714(1)(e), the General Assembly specifically made its threshold requirement applicable to claims for damages for "bodily injury." It did not choose to use the term "personal injury," which would clearly have encompassed loss of consortium claims.

Second, the basis for recovery on a loss of consortium claim is interference with the continuance of a healthy and happy marital relationship. The injury suffered by the spouse claiming loss of consortium is different in kind and may be different in severity from the injury suffered by the other spouse. *See Lee v. Colorado Department of Health, supra.* Thus, claims based on the two types of injury are not necessarily subject to the same defenses.

In this case, plaintiff testified that he and his wife had had a good marriage prior to the accident but that, after the accident, his wife suffered from headaches and was irritable and upset. A psychiatrist testified that plaintiff and his wife "focused largely on themselves" after the accident and got into arguments during that time. Both plaintiff and his wife testified that the accident, which occurred on an icy highway, made her afraid to drive on icy roads and that she did not want to spend another winter in Colorado. Plaintiff's wife in fact left Colorado and returned to her home in Louisiana some months after the accident.

As noted, it is not known whether the jury in this case actually awarded any damages for loss of consortium. Nevertheless, the trial testimony relating to that claim supports the conclusion that a spouse could have a cognizable loss of consortium claim even where the medical expenses of the injured spouse did not satisfy the threshold requirements of the No–Fault Act.

Accordingly, we conclude that, because plaintiff's loss of consortium claim was not derivative of his wife's bodily injury claim for purposes of the No–Fault Act threshold, the trial court did not err in letting that claim go to the jury notwithstanding the absence of evidence that that threshold had been met.

## II.

Defendant next contends that the trial court abused its discretion by precluding him from cross-examining plaintiff regarding his pre-accident employment history. Again, we disagree.

The extent of permissible cross-examination is a matter within the sound discretion of the trial court, *Combined Communications Corp. v. Public Service Co.*, 865 P.2d 893 (Colo.App.1993), as is the determination whether to exclude evidence because its probative value is outweighed by the countervailing considerations set forth in CRE 403. *Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo.1994). Absent an abuse of discretion, the trial court's rulings on these matters will not be disturbed on appeal. *Hock v. New York Life Insurance Co., supra.*

There is no right to cross-examine on a collateral matter for impeachment or for any other purpose. *Combined Communications Corp. v. Public Service Co., supra.*

Prior to trial, plaintiff moved for an order excluding evidence of his pre-accident employment history, including the circumstances surrounding his departure from one previous position. The trial court granted the motion, finding that, since plaintiff was no longer claiming loss of future earning capacity, evidence regarding his previous employment was irrelevant.

Later, after plaintiff's wife had testified and while plaintiff was still on the stand, defendant asked the court to reconsider its ruling so that he could cross-examine plaintiff about his employment history. Defendant argued that information regarding the jobs plaintiff had lost before the accident was now relevant to counter the testimony of plaintiff and his wife suggesting that their financial problems arose only after the accident.

The trial court initially considered allowing such cross-examination, but ultimately declined to do so, expressing its concern that permitting cross-examination on plaintiff's prior employment would get the parties "way off the track" and that it would require going

into some issues e.g., regarding an assault on plaintiff at one previous place of employment "that we don't need to get into in this trial." The court further stated that the testimony was "not that significant anyway."

The court's comments demonstrate that it undertook a balancing analysis consistent with CRE 403, which permits exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See Hock v. New York Life Insurance Co., supra.* In characterizing the testimony as "not that significant," the court also implicitly concluded that questioning plaintiff about his employment history would constitute cross-examination on a collateral matter. *See Combined Communications Corp. v. Public Service Co., supra.*

Contrary to defendant's characterization of the testimony on appeal, plaintiff's testimony regarding his difficult financial circumstances after the accident was not a significant part of his damages case. Most of the testimony of both plaintiff and his wife in support of his damages claim related to plaintiff's physical pain and his emotional and psychological problems. It was not an abuse of discretion for the trial court to conclude that plaintiff's pre-accident employment was a collateral matter and that permitting cross-examination about it could lead to a lengthy digression, with a potential for jury confusion and waste of time that would outweigh any probative value the testimony might have.

Finally, although defendant claims on appeal that he was also precluded from questioning plaintiff about "related circumstances" in addition to his employment difficulties, we do not interpret the trial court's ruling as precluding defense counsel from impeaching plaintiff's testimony by, e.g., questioning him about his financial condition and credit card debt before and after the accident. Although defendant contends that he understood he was not permitted to inquire into these matters, the record does not reflect a basis for such an understanding.

## III.

Defendant asserts that the trial court abused its discretion in denying his motion for a new trial or remittitur, in which he argued that the court had improperly limited his cross-examination and that the damages award was excessive. As set forth above, we perceive no error in the trial court's limitation on defendant's cross-examination. We are likewise not persuaded that the damages award was manifestly excessive.

Whether to grant a motion for a new trial is a decision committed to the discretion of the trial court. *Middleton v. Beckett,* 960 P.2d 1213 (Colo.App.1998).

The amount of damages to which an injured party is entitled is a matter within the sole province of the jury. *Roberts v. C & M Ready Mix Concrete Co.,* 767 P.2d 769 (Colo.App.1988). A jury's award of damages in a personal injury case will not be set aside unless the damages awarded are either grossly and manifestly excessive or grossly and manifestly inadequate. *Gibbons v. Choury,* 169 Colo. 267, 455 P.2d 649 (1969).

We agree with the trial court that, in light of the subjective nature of a jury's assessment of non-economic damages—the only type of damages awarded here—and in light of the evidence that plaintiff's injuries were permanent and painful, the amount awarded was not manifestly excessive. Plaintiff's orthopedic surgeon opined that plaintiff's disk problems resulting from the accident were permanent and that there was no reason to doubt his complaints regarding pain. Plaintiff's psychiatrist testified regarding his emotional problems after the accident. Plaintiff and his wife also testified to his pain and the effect the accident had on his life.

Moreover, the jury was instructed not to be influenced by sympathy or prejudice. We are to presume that the jury followed this instruction. *See Hall v. Walter,* 969 P.2d 224 (Colo.1998).

Because the damages award here was not so clearly excessive as to indicate that the jury disregarded its instruction and instead awarded damages based on sympathy or prejudice, the trial court did not abuse its

discretion in declining to set aside that award.

## IV.

 Finally, defendant contends that the court abused its discretion in including in its cost award $1087.13 for travel expenses for plaintiff's wife, who voluntarily came from Louisiana to Colorado to testify at trial. We do not agree.

 Unless a statute or rule of civil procedure specifically prohibits the award of costs, trial courts may exercise their discretion to award costs to a prevailing party. *See* C.R.C.P. 54(d); *Rossmiller v. Romero,* 625 P.2d 1029 (Colo.1981). Section 13–16–122, C.R.S.1999, lists items that may be awarded as costs, and specifically includes subsistence payments and mileage for witnesses. Section 13–16–122(1)(e), C.R.S.1999.

Notwithstanding § 13–16–122(1)(e), defendant argues that the award of travel expenses for plaintiff's wife was improper based on cases holding that witnesses from out of state who are not under subpoena are not entitled to mileage fees. *See Union Pacific R.R. Co. v. Brower,* 60 Colo. 579, 155 P. 312 (1916); *Crawford v. French,* 633 P.2d 524 (Colo.App.1981).

We do not agree that these cases precluded the trial court from including plaintiff's wife's travel expenses in its cost award. They were decided before the enactment of § 13–16–122—which in any event is not an exclusive but only an illustrative list of costs that may be awarded, *see Cherry Creek School District No. 5 v. Voelker,* 859 P.2d 805 (Colo.1993)—and before recent supreme court cases indicating a willingness to give trial courts broad discretion in awarding costs. *See Cherry Creek School District No. 5 v. Voelker, supra; American Water Development, Inc. v. Alamosa,* 874 P.2d 352 (Colo. 1994).

Further, the cases cited by defendant do not constitute a "statute or rule specifically prohibiting the award of costs," which the supreme court held in *Rossmiller v. Romero, supra,* 625 P.2d at 1030, to be a limitation on the trial court's discretion to award costs to a prevailing party. The statute on which the cases rely, § 13–33–103, C.R.S.1999, addresses payment of jurors' and witnesses' mileage fees out of state funds and does not, in our view, specifically prohibit a court from including travel expenses in the costs that a losing party must pay.

Finally, we do not agree with defendant that the amount awarded—which included the cost of a five-night hotel stay and a week of car rental in addition to air fare and parking—was excessive simply because the trial itself lasted only three days.

## V.

Because we do not consider this appeal frivolous, we decline plaintiff's request for sanctions pursuant to C.A.R. 38(d). *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993).

The judgment is affirmed.

Judge METZGER and Judge NEY, concur.