Wade Michael WELCH, Petitioner,

v.

Edwin Bruce GEORGE, Respondent.

No. 99SC964.

Supreme Court of Colorado,
En Banc.

Nov. 28, 2000.

Wick, Campbell, Bramer, Ukasick & Trautwein, LLC, Troy A. Ukasick, Kimberly B. Schutt, Fort Collins, CO, Attorneys for Petitioner.

J.J. Vick, Greeley, CO, Attorney for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *George v. Welch*, 997 P.2d 1248 (Colo.App.1999). In that decision, the court of appeals held that a loss of consortium claim, arising out of an automobile accident, can be brought without meeting the threshold requirements of section 10–4–714, 3 C.R.S. (2000). The court of appeals also held that a trial court may award a prevailing

party costs for a witness's traveling expenses even if the witness testified voluntarily and was not subpoenaed.

We reverse and remand for proceedings consistent with this opinion. In reaching our decision, we conclude that the requirements of section 10–4–714 do apply to a loss of consortium claim arising out of an automobile accident. Therefore, we remand the case with directions to return it to the trial court to determine whether the injuries to the respondent's wife met the requirements of section 10–4–714 and, thus, whether the respondent's loss of consortium claim was actionable. Furthermore, we hold that a prevailing party may not be awarded costs for the travel mileage of a witness who testifies voluntarily.

## I.

The petitioner, Wade Michael Welch ("Welch"), was involved in an automobile accident in which the vehicle he was driving collided with a vehicle driven by the respondent, Edwin Bruce George ("George"). Billie Sue Schexnaydre, George's wife, was also in the automobile when it was struck by Welch's vehicle. George and his wife both sued Welch to recover damages for their personal injuries, asserting claims of negligence, negligence per se, and loss of consortium.

Shortly after commencing legal action against Welch, George's wife separated from George and moved to Louisiana. At about the same time as the separation, George's wife entered into a settlement agreement with Welch. George, however, did not reach a similar agreement with Welch and continued with his claim for relief.

Before trial, Welch filed a motion to preclude George's loss of consortium claim. Welch asserted that George's loss of consortium claim was not actionable because it was derivative of his wife's personal injury claims and George could not establish that his wife's injuries met one of the threshold require-

ments of the Colorado Auto Accident Reparations Act, sections 10–4–701 to –726, 3 C.R.S. (2000)("No–Fault Act"). The trial court denied the motion.

A jury trial was held to determine the merits of George's claim. George's wife traveled from Louisiana to Colorado in order to testify at the trial on her husband's behalf. At the conclusion of the trial, the jury returned a verdict in favor of George awarding him damages in the amount of $120,000. The verdict did not distinguish between George's personal injury and loss of consortium claims. Further, the trial court awarded George $5,022.19 in costs including $1,087.13 for the travel expenses his wife incurred testifying at trial.

On appeal Welch contended that the trial court erred by: (1) allowing the jury to consider George's loss of consortium claim when the claim was derivative of his wife's bodily injuries and no evidence was produced to show that her injuries met the threshold requirements of the No–Fault Act; and (2) awarding George costs for the travel expenses of his wife because she testified voluntarily and was not subpoenaed. The court of appeals affirmed the trial court's holding. See George, 997 P.2d at 1249. In doing so it held that George's loss of consortium claim was not derivative of his wife's bodily injury claim for purposes of the No–Fault Act, and that the trial court did not err when it awarded George his wife's travel expenses. See id. at 1251, 1254.

We granted certiorari to consider whether the court of appeals appropriately interpreted the No–Fault Act, and whether a trial court may award a witness's travel expenses as costs when the witness testifies at trial voluntarily.[1] We now hold that George's loss of consortium claim was derivative of his wife's bodily injury claims. Furthermore, we hold that a trial court does not have the discretion to award costs for the mileage traveled by a witness in order to testify at

---

1. We granted certiorari on the following two issues:
   (1) Whether a loss of consortium claim is derivative of a spouse's bodily injury claim for purposes of section 10–4–714, 3 C.R.S. (2000),

thereby subjecting the claim to the statutory limitations on tort actions.
   (2) Whether a party is entitled to a cost award for the travel expenses of an out-of-state witness who voluntarily testifies at trial.

trial when the witness testifies voluntarily and is not subpoenaed.

## II.

In this case, both issues before us are questions of statutory interpretation and, therefore, are subject to de novo review. *See Fogg v. Macaluso,* 892 P.2d 271, 273 (Colo. 1995).

Welch contends that Colorado's No–Fault Act, specifically section 10–4–714, applies to loss of consortium claims. Therefore, he argues that George's loss of consortium claim is barred unless George can prove that his wife's injuries meet the statute's threshold requirements.[2] We agree. In reaching our conclusion, we first analyze whether the use of the language "bodily injury" in section 10–4–714 should be read so as to exclude claims for loss of consortium. We then consider whether a loss of consortium claim is an independent claim that is not required to meet the threshold requirements of section 10–4–714.

### A.

The No–Fault Act creates an insurance benefit system that provides compensation to persons injured in an automobile accident without regard to fault. *See Bushnell v. Sapp,* 194 Colo. 273, 571 P.2d 1100, 1102 (1977). The intent of the No–Fault Act is to avoid the inadequate compensation of such victims. *See* § 10–4–702, 3 C.R.S. (2000).

One of the legislative purposes of the No–Fault Act is to eliminate litigation of minor claims, thus providing timely resolution of claims for major injuries. *See Bushnell,* 571 P.2d at 1106. The statute effectuates the latter purpose by precluding recovery for "damages for bodily injury caused by a motor vehicle" unless one of the threshold requirements enumerated in the statute is met. *See* § 10–4–714(1),

3 C.R.S. (2000). The threshold requirements are: (a) death, (b) dismemberment, (c) permanent disability, (d) permanent disfigurement, (e) medical and rehabilitative expenses in excess of two thousand five hundred dollars, or (f) loss of earnings that continue in excess of a specified amount of time. *See id.* The fifth threshold requirement is at issue in this case.

The court of appeals based its holding on the plain language of the statute, and found that because loss of consortium is not a "bodily injury," it is not covered by section 10–4–714. The court of appeals' narrow construction of the statute, however, is not supported by case law.

In *Bushnell,* a plaintiff claimed $25,000 in damages for pain and suffering but had only incurred medical expenses of $236, an amount below the then-applicable threshold of $500. *See Bushnell,* 571 P.2d at 1102. In analyzing the claim, we reasoned that the legislature did not set an independent threshold requirement for pain and suffering claims in section 10–4–714 because pain and suffering cannot be measured objectively and, thus, any separate monetary threshold for pain and suffering could easily be circumvented. *See id.* at 1106. Circumvention of the threshold requirements would frustrate the legislative intent of precluding lesser tort actions since it would allow plaintiffs to maintain lawsuits based on minor accidents. *See id.* Therefore, we concluded that the No–Fault Act's threshold requirements must apply to claims for pain and suffering in order to effectuate the legislative intent. *See id.* Applying this reasoning, we determined that the plaintiff's claim for pain and suffering was not actionable because it did not meet the statutory threshold requirements. *See id.*

Thus, *Bushnell* shows that we have not followed the court of appeals' literal interpre-

---

**2.** Prior to going to trial, a settlement was reached between George's wife and Welch. From the record we ascertain that this agreement contained a provision stating that Welch denied any liability as to any claims resulting from the accident. It also stated that the settlement would not affect any claims brought by George. The language of the settlement does not evidence a clear manifestation of intent by Welch to waive his right to raise defenses available under the No–Fault Act in the future. Absent such an intent, Welch may now raise defenses available under the No–Fault Act against George. *See Dep't of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984).

tation of the statutory reference to "bodily injury." A loss of consortium claim, like a claim for pain and suffering, cannot be objectively measured. Therefore, following the precedent from *Bushnell*, we must look beyond the face of the statute to determine if the threshold requirements of section 10–4–714 apply to a loss of consortium claim.

### B.

The court of appeals also found that it is more consistent with the purpose of the No–Fault Act to treat a loss of consortium claim as an independent rather than a derivative claim. The court of appeals correctly stated that loss of consortium claims are treated as independent claims in some contexts. *See George*, 997 P.2d at 1251. As we have observed, however, "neither the derivative nor the independent approach is able to resolve all the conceptual problems that a claim for loss of consortium holds out for [all] areas of the law." *Lee v. Colorado Dep't of Health*, 718 P.2d 221, 232 (Colo.1986).

In deciding which approach to use in a given area of law, we consider the legislative goals in that legal area. *See id.* at 232–33 n. 10 (noting that the goals of the Workers' Compensation Act, to compensate victims of workplace injuries without regard to fault and to immunize employers from common law tort actions, would not be furthered if loss of consortium was treated as a totally independent personal injury claim). The No–Fault Act is similar in purpose to the Workers' Compensation Act. It also provides for payment of compensation without regard to fault while restricting the ability of injured persons to recover damages through litigation.

The general intent of the No–Fault Act is to prevent victims of automobile injuries from receiving inadequate compensation. Section 10–4–714 is an integral part of the No–Fault Act and is designed to further its intent by eliminating minor tort claims, and by providing speedy and adequate relief for victims who have suffered serious injuries.

*See Bushnell,* 571 P.2d at 1106. Allowing a loss of consortium claim to be brought as an independent action would clearly circumvent this intent because it would allow a plaintiff to bring a claim even though the spouse's injuries do not meet the statutorily required threshold. This would result in the kind of time-consuming litigation of small matters that the No–Fault Act was designed to prevent.

Based on this type of analysis, other jurisdictions have found that a loss of consortium claim is derivative for the purposes of no-fault insurance acts, and as such, is only maintainable if the injuries to the spouse on which a claim is based meet statutory threshold requirements. *See* 1 Irvin E. Schermer, *Automobile Liability Insurance* § 17.06[1] (3d ed. 1995)("Where a statute has not expressly barred a claim for derivative losses, the courts have been unanimous in holding that unless the spouse ... has sustained threshold qualified personal injury, the derivative spouse ... may not assert a claim for derivative loss.").[3]

For the reasons stated above, we find that for the purposes of the No–Fault Act a claim for loss of consortium should be treated as a derivative claim. Therefore, the claim is only actionable if the spouse's injuries from which it derives meet the threshold requirements of section 10–4–714.

### C.

At trial the jury awarded George $120,000 in total damages without any apportionment between George's bodily injury claim for his own injuries and his claim for loss of consortium. Therefore, on remand the jury award will stand if George can prove that his wife's injuries meet one of the threshold requirements of section 10–4–714. If he cannot, the damage award must be vacated and a new trial held to determine what damages George suffered as a result of his own injuries.

---

**3.** The author cited cases from five jurisdictions that have considered this issue and found that all five jurisdictions treated a claim for loss of consortium as a derivative claim that must meet

statutory thresholds. *See* 1 Irvin E. Schermer, *Automobile Liability Insurance* § 17.06[1] n.1 (3d ed.1995).

## III.

Welch argues that the trial court abused its discretion when it awarded George costs for the travel expenses his wife incurred in order to testify at trial. He contends that because George's wife was not under subpoena and testified voluntarily the trial court could not award her travel fees as costs. We agree that George may not be awarded costs for the mileage his wife traveled in order to testify at trial.

Section 13–16–122 provides that:

Whenever any court of this state assesses costs pursuant to any provision of this article, such costs may include ... [t]he witness fees, including subsistence payments, mileage at the rate authorized by section 13–33–103, and charges for expert witnesses approved pursuant to section 13–33–102(4). ...

§ 13–16–122, 5 C.R.S. (2000). In turn, section 13–33–103 states that:

[A]ll witnesses shall receive, in counties of every class, the same base mileage allowance amount as provided for state officers and employees under section 24–9–104, C.R.S., for each mile actually and necessarily traveled in going from his or her place of residence to the place named in the *summons* or *subpoena* and in returning to such place of residence.

§ 13–33–103, 5 C.R.S. (2000)(emphasis added). Section 13–16–122 was enacted in 1981. *See* ch. 199, sec. 3, § 13–16–122, 1981 Colo. Sess. Laws 946, 947. Section 13–33–103 was enacted in 1891. *See* sec. 12, 1891 Colo. Sess. Laws 200, 215. In its original form, as now, the statute only provided for the payment of mileage fees to subpoenaed witnesses. *See id.*

Previously, we held that a witness could not be reimbursed for his or her travel mileage to attend trial unless the witness was subpoenaed.[4] *See Union Pac. R.R. Co. v. Brower,* 60 Colo. 579, 155 P. 312, 314–15 (1916). We reached this conclusion because the relevant statute specifically stated that only subpoenaed witnesses could be reimbursed for their travel mileage. *See id.* at 314.

The statute at issue in *Brower* is now codified as section 13–33–103, and still provides that only subpoenaed witnesses shall be reimbursed for their travel mileage. Furthermore, the courts of this state have followed the precedent set in *Brower* and have not allowed recovery of a non-subpoenaed witness's travel mileage. *See Collins v. Bandy,* 890 P.2d 266, 267 (Colo.App.1995); *C.R.A.H. v. P.M.M.,* 647 P.2d 239, 241 (Colo.App.1981); *Crawford v. French,* 633 P.2d 524, 526–27 (Colo.App.1981). The court of appeals, however, held that the later enacted statute, section 13–16–122 prevailed, and it distinguished *Brower* on that ground. *See George,* 997 P.2d at 1254.

■ It is true, as the court of appeals recognized, that section 13–16–122 is an illustrative, not exclusive, list of costs that a court may award. *See Cherry Creek Sch. Dist. No. 5 v. Voelker,* 859 P.2d 805, 813 (Colo.1993). The question is whether section 13–16–122 intended to repeal the subpoena requirement of section 13–33–103. Clearly it did not do so expressly, and repeals by implication are not favored. *See Martin v. Montezuma–Cortez Sch. Dist. RE–1,* 841 P.2d 237, 251 (Colo. 1992). Furthermore, section 13–16–122 refers to section 13–33–103 and provides that mileage expenses may be awarded to witnesses "at the rate authorized by section 13–33–103."

The legislative history of section 13–16–122 does not show an intent to repeal the subpoena requirement; to the contrary, the legislature was informed that the proposed statute did not change the existing law. *See Court Costs: Hearing on H.B. 1171 Before the Senate Judiciary Committee,* 53d Gen. Assem., 1st Reg. Sess. (Colo.1981)(statement of Bernard Steinberg, Judicial Branch representative). The statute was described as a loose

---

4. Absent a statute, a state court cannot compel the attendance of a nonresident witness who is not present in the state. *See* C.R.C.P. 45(e)("A subpoena requiring the attendance of a witness at a deposition, hearing or trial may be served any place *within the state.*")(emphasis added); *Wilcox v. Hunt,* 38 U.S. (13 Pet.) 378, 10 L.Ed. 209 (1839); *Minnesota ex rel. Minnesota Atty. Gen. v. Dist. Court,* 155 Colo. 521, 395 P.2d 601 (1964); *Solliday v. Dist. Court,* 135 Colo. 489, 313 P.2d 1000 (Colo.1957).

shopping list of existing costs intended to give guidance to the courts while not repealing existing provisions. *See id.*

Thus, absent legislative intent to change existing law regarding the recovery of witness mileage fees as costs, we conclude, as *Brower* did, that mileage fees may be awarded only to subpoenaed witnesses. Accordingly, the trial court on remand must delete the wife's mileage from the travel costs it awarded to George.[5]

## IV.

In summary, we hold that the threshold requirements of section 10–4–714 of the No–Fault Act apply to a claim for loss of consortium. We also hold that a trial court may award a witness's travel mileage as costs to a prevailing party only if the witness appeared at trial under subpoena. The judgment of the court of appeals is therefore reversed and the case is remanded to be returned to the trial court for further proceedings consistent with this opinion.

---

**5.** Section 13–33–103 provides that only subpoenaed witnesses may receive *mileage fees*. It does not, however, similarly restrict the award of any other expenses associated with a witness attending trial. Therefore, the trial court had discretion to award such expenses to George.