**Q & T FOOD STORES, INC., a Colorado corporation, Plaintiff–Appellant,**

v.

**Mark ZAMARRIPA Director, State Lottery Division, Defendant– Appellee.**

No. 94CA1155.

Colorado Court of Appeals, Div. II.

June 1, 1995.

Rehearing Denied July 13, 1995.

Certiorari Granted Jan. 22, 1996.

each of which possessed a license to sell Colorado lottery tickets. The renewal of these licenses required Q & T to submit an individual history record of each owner, partner, and principal officer, and of each stockholder owning ten percent or more of the company.

As a part of its application, Q & T submitted an individual history record of K.J.L., a principal officer of the company. Although K.J.L.'s record revealed a conviction of sexual assault on a child in 1985, Q & T's licenses were renewed for 1991–1992.

Subsequent to the renewal, the state commenced a proceeding seeking revocation of Q & T's lottery sales licenses on the grounds that Q & T was a corporation in which a person prohibited by § 24–35–206(4)(e), C.R.S. (1988 Repl.Vol. 10A) was an officer. Under that statute, any person who is not of good character and reputation in the community in which he resides, notwithstanding the provisions of § 24–5–101, C.R.S. (1994 Cum. Supp.) is ineligible for a license as a Colorado lottery sales agent.

Pursuant to §§ 24–35–204(3)(d), 24–35–206, 24–4–104, and 24–4–105, C.R.S. (1988 Repl.Vol. 10A), a hearing was held before an Administrative Law Judge (ALJ) to determine whether Q & T's licenses as a lottery sales agent should be revoked. At this hearing, the State Lottery Division (Division) presented evidence and Q & T stipulated that K.J.L. had been convicted of sexual assault on a child in 1985. The Division presented no other evidence whatsoever that K.J.L. was, at the time of the hearing, a person who was not of good character and reputation in the community.

Q & T, on the other hand, presented substantial evidence of K.J.L.'s rehabilitation throughout his four years of probation and beyond. In addition, Q & T presented evidence of K.J.L.'s diligence and commitment to dealing with and solving his problems and his efforts at reestablishing himself as a decent, functioning person in society.

After considering all the evidence, the ALJ found that the Division relied solely on K.J.L.'s conviction as its basis for revoking Q & T's lottery licenses. Since substantial, un-

Gerald D. Weaver, P.C., Gerald D. Weaver, Montrose, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Thomas D. Fears, Asst. Atty. Gen., Denver, for defendant-appellee.

Opinion by Judge JONES.

Plaintiff, Q & T Foodstores, Inc., appeals a trial court order affirming the Felony Review Panel's order revoking Q & T's licenses as a lottery sales agent. We reverse.

At the outset of these proceedings, Q & T operated three convenience store outlets,

rebutted evidence presented by Q & T indicated that K.J.L. had undergone extensive therapy and rehabilitation both during and after his probationary period, the ALJ concluded that the division had failed to prove that K.J.L. was not a person of good character or reputation. Therefore, the ALJ's initial decision recommended that the revocation proceedings be dismissed.

After reviewing the initial decision of the ALJ, the Director of the State Lottery Division (Director) accepted the ALJ's findings of fact but reached contrary conclusions of law. In his order, the Director declined to consider the rehabilitation of K.J.L. and concluded that, based on the felony conviction alone, K.J.L. was not a person of good character and, therefore, recommended the revocation of Q & T's lottery licenses.

Under § 24-35-206(3), C.R.S. (1988 Repl. Vol. 10A) when a felony conviction is an issue in the renewal of a lottery sales agent's license, the Director's determination must be submitted to a three-member panel which must approve or reject such determination. In accordance with this provision, the Felony Review Panel (Panel) accepted, without modification, the Director's final order that Q & T's licenses as a lottery sales agent be revoked.

Pursuant to § 24-4-106, C.R.S. (1988 Repl. Vol. 10A), Q & T sought judicial review of the Panel's final agency order in the district court, which affirmed the order.

In this appeal, Q & T contends that the revocation of its lottery sales licenses was arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence in the record as a whole. We agree.

■ Section 24-4-106(7), C.R.S. (1988 Repl.Vol. 10A) requires that this court set aside an agency action that is, among other things, arbitrary or capricious, an abuse of discretion, or unsupported by substantial evidence when the record is considered as a whole. While we recognize that, for this court to set aside an agency action on the ground that it was arbitrary or capricious, we must find that the action is unsupported by competent evidence, *Dolan v. Rust*, 195 Colo. 173, 576 P.2d 560 (1978), it is also clear that

§ 24-4-105(7), C.R.S. (1988 Repl.Vol. 10A) places the burden of proof upon the proponent of an order. Therefore, we hold that, when an agency seeks revocation of an existing license, the agency is the proponent of the order and bears the burden of proof. Thus, here, the Division was required to prove that K.J.L. was not a person of good character or reputation in the community within the meaning of § 24-35-206(4)(e).

Section 24-35-206(4), C.R.S. (1988 Repl. Vol. 10A) provides that:

> Licensed sales agents may include persons, firms, associations, or corporations, profit or nonprofit, but the following are ineligible for any license as a sales agent:
>
> . . . .
>
> (e) Any person who is not of good character and reputation, notwithstanding the provisions of section 24-5-101, in the community in which he lives.

Section 24-5-101, C.R.S. (1994 Cum.Supp.) provides that the fact that a person has been convicted of a felony or other offense involving moral turpitude shall not, alone, prevent that person from being hired in public employment or from obtaining a license, permit, certificate, or registration required for business or an occupation. It also states that:

> Whenever any state or local agency is required to make a finding that an applicant for a license . . . is a person of good moral character as a condition to the issuance thereof, the fact that such applicant has, at some time prior thereto, been convicted of a felony or other offense involving moral turpitude, and pertinent circumstances connected with such conviction, shall be given consideration in determining whether, in fact, the applicant is a person of good moral character at the time of the application. The intent of this section is to expand employment opportunities for persons who, notwithstanding that fact of conviction of an offense, have been rehabilitated and are ready to accept the responsibilities of a law-abiding and productive member of society.

Under the circumstances here, we conclude that we need not consider whether, and

if so to what extent, § 24–5–101 is applicable under § 24–35–206(4)(e).

In its attempt to carry its burden under § 24–35–206(4)(e), the Division presented evidence establishing only that K.J.L. had been convicted of sexual assault on a child six and one half years prior to the revocation proceeding. The Division did not attempt to present any evidence that, at the time of the revocation proceeding, K.J.L. was not a person of good character and reputation in the community in which he resided. Instead, it relied solely on K.J.L.'s prior conviction to carry its burden of proof. Furthermore, on cross-examination, the Division's only witness admitted that he did not know whether K.J.L. was of good character at the time of the proceeding.

On the other hand, Q & T presented substantial testimonial evidence by K.J.L. and his family. K.J.L. testified that, prior to his guilty plea in 1985, he had entered a therapy program to treat his problems. Upon acceptance of his guilty plea, the court then placed K.J.L. on probation for 4 years, during which time he continued the therapy program he had previously entered.

During the therapy program, K.J.L. was financially responsible for 100% of his living expenses and rent while residing in the program's housing, in addition to all his therapy bills. During this time, K.J.L. met with his therapist in one-on-one settings and in group settings as often as twice a day.

Upon completion of his probation, K.J.L. continued with his therapy because he was not confident that he was completely rehabilitated. During this time, K.J.L. also demonstrated successful business skills as he worked his way to manager status of seven convenience stores.

When he was finally confident in his ability to function as a normal and law-abiding individual in society, K.J.L. moved to Montrose in order to assist his father in running three convenience stores in the area. His father testified that K.J.L.'s business skills and experience greatly increased sales and profits in his three convenience stores in Montrose and that K.J.L. was a great asset to the business.

Finally, Q & T presented testimony of K.J.L.'s daughter, who had been the victim of K.J.L.'s sexual assault. She testified that, although at one time she had hated her father for the things he had done to her, after many years of individual and family therapy and reestablishing their relationship, she had once again come to love and respect her father. The two have since been able to establish a very strong father/daughter relationship in spite of their past and are now very close.

■ In accepting the director's final order which revoked Q & T's lottery licenses, the Panel refused to consider any rehabilitation K.J.L. had undergone or any evidence that he had changed and become a person of good character and reputation in his community subsequent to his conviction. While, in regard to license revocation, it is the function of the licensing agency to review the evidence and resolve any conflicts, *Board of Assessment Appeals v. Arlberg Club*, 762 P.2d 146 (Colo.1988), any agency decision must be supported by substantial evidence when the record is considered as a whole. Section 24–4–106(7), C.R.S. (1988 Repl.Vol. 10A).

■ Here, we conclude that, by not considering any evidence of K.J.L.'s rehabilitation and his character at the time of the revocation proceeding, the Panel acted arbitrarily and capriciously. Moreover, based on the evidence and record as a whole, we conclude that K.J.L. is a person of good character and reputation in the community in which he resides within standards set forth in § 24–35–206(4)(e). Thus, the order revoking Q & T's three licenses as a lottery sales agent cannot stand.

Accordingly, the order of the Felony Review Panel is reversed and the cause is remanded with directions that the Panel enter an order reinstating Q & T's licenses as a lottery sales agent.

CRISWELL and PIERCE *, JJ., concur.