**Mark ZAMARRIPA, Director, State Lottery Division, Petitioner,**

**v.**

**Q & T FOOD STORES, INC., a Colorado corporation, Respondent.**

**No. 95SC510.**

Supreme Court of Colorado, En Banc.

Jan. 13, 1997.

Gale A. Norton, Attorney General, Stephen ErkenBrack, Chief Deputy Attorney General, Richard Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Larry A. Williams, First Assistant Attorney General, Thomas D. Fears, Assistant Attorney General, State Services Section, Denver, for Petitioner.

Weaver & Fitzhugh, Gerald D. Weaver, Michael F. Deneen, Montrose, for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari to review four questions [1] regarding the court of appeals decision in *Q & T Food Stores, Inc. v. Zamarripa*, 910 P.2d 44 (Colo.App.1995). This appeal is brought to us by the director of the State Lottery Division (Director) who contends

---

1. The issues for certiorari were stated as follows:

(1) Whether the State Lottery Division (through both its Director and the Felony Review Panel), in its analysis of a lottery licensee's character, pursuant to the provisions of section 24–35–206(4)(e), 10A C.R.S. (1988), was further required to consider evidence concerning that lottery licensee's rehabilitation, pursuant to section 24–5–101, 10A C.R.S. (1995 Supp.), after the licensee had been convicted of felonious incestuous sexual assault on a child, even though section 24–35–206 specifically exempts the Division from engaging in such analysis;

(2) Whether the State Lottery Division was required to consider the character of the lottery licensee in the community in which he resided when the lottery licensee moved to a new community, and kept his past a secret from that community, or whether the Division may consider the operative effect of his past on his character in that community, should his past become known and understood;

(3) Whether the State Lottery Division sufficiently established the character of an officer of respondent Q & T Food Stores, Inc., pursuant to section 24–35–206(4)(e), 10A C.R.S. (1988), by only establishing the fact of his conviction for felonious incestuous sexual assault on a child; [and]

(4) Whether the court of appeals erred in finding the lottery licensee had a good reputation in the community in which he resided, when the State Lottery Division alleged no such defi-

that the Lottery Division (Division) properly revoked three lottery sales agent licenses issued for convenience stores in Montrose, Colorado. These licenses were held by Q & T Food Stores, Inc. (Q & T), a family-owned Colorado corporation. The revocation was based on the Director's conclusion that because a family member, K.J.L., who had recently been added by Q & T as an officer and managing agent of the corporation, had been convicted of sexual assault on his daughter, Q & T lacked the requisite character to continue as a lottery sales agent. This conviction was held by the Director to be presumptive and conclusive evidence that the licenses must be revoked.

The Director's revocation decision was entered after an evidentiary hearing before an Administrative Law Judge (ALJ). The ALJ had entered detailed findings of fact and conclusions of law and recommended to the Director that the licenses *not* be revoked because "the offense which K.J.L. committed bears no relation whatever to the Lottery or its operation." The Director accepted the ALJ's findings of evidentiary facts but entered an order revoking the three licenses, on the basis that: "Sexual assault on a child is a public matter and a reflection of lack of good character ... the Lottery does not have to consider rehabilitation as did the Administrative Law Judge."

To become final, when a felony conviction is involved in consideration of Lottery license actions, the Director's order requires review by the Felony Review Panel (Panel). That Panel summarily affirmed the Director's revocation order. Pursuant to a stipulation between the Agency and Q & T, K.J.L. resigned from the management of the family corporation during the pendency of these judicial review proceedings.

On review of the state agency action, the district court upheld revocation of the three licenses. The court of appeals set aside the revocation order and directed reinstatement of Q & T's licenses. We agree in part. The Director's revocation order was arbitrary and capricious because the license revocations were not in accord with the agency's statutory authority. The court of appeals, however, proceeded to find that K.J.L. was a person of good character. This finding was improper and must be set aside as beyond the scope of appellate review. The court's appellate function was fulfilled when it determined that this revocation proceeding could not be sustained under the applicable law. Accordingly, we affirm in part and reverse in part the judgment of the court of appeals.

I.

Q & T operates three convenience stores in Montrose, Colorado, selling gasoline, certain alcoholic beverages, food, and other miscellaneous goods, including lottery tickets. We shall employ the initials of certain persons in this proceeding to respect the privacy interests of the victim of the criminal offense, as the court of appeals did in its opinion.

K.D.L. incorporated Q & T in April of 1981, and at all times has been the sole shareholder, president, and a director of the corporation. On February 1, 1990, K.J.L., K.D.L.'s adult son, moved to western Colorado in order to manage the family stores because of his father's impending retirement.

As part of the annual license renewal process, under the applicable regulation of the Lottery Commission,[2] Q & T was required to submit to the Division an individual history record of each owner, partner, principal officer, and managing agent, as well as each stockholder who owned 10% or more of the company. On September 10, 1991, Q & T submitted its application for license renewal. The individual history record for K.J.L., a newly added officer and managing agent of Q & T, disclosed a 1985 felony incest conviction, on a plea of guilty, for fondling his eleven-year-old daughter. Prior to moving to west-

---

ciency as an operative justification for the sanction in this case.

**2.** Each license issued by the Lottery Director for the sale of lottery tickets shall terminate one year from the date of issue, unless it has been timely renewed. Rule 2.4(a), 1 C.C.R. 206–1 (1993).

ern Colorado, K.J.L. successfully completed a sentence of probation which involved mental health treatment and family therapy.

The Division renewed each of the three licenses with an issue date of October 1, 1991, and an expiration date of October 1, 1992. Shortly thereafter, the Division commenced a license revocation proceeding against Q & T. In its notice of hearing dated October 21, 1991, the Division alleged that section 24–35–206(4)(e), (h), and (i), 10A C.R.S. (1988),[3] of the Lottery statute rendered Q & T ineligible for sales agent licenses because one of its officers, K.J.L, had been convicted of sexual assault on a child. The Division, the Director, and the Panel throughout this proceeding have relied on section 24–35–206(4)(e), preventing issuance of a license to: "Any person who is not of good character and reputation, notwithstanding the provisions of section 24–5–101, in the community in which he resides." Under section 24–35–206(4)(h) & (i), the lack of good character and reputation of a person who is an officer, director, managing agent, or participant in the management or sales of lottery tickets or shares, is attributed to the corporation.

The ALJ determined that K.J.L.'s conviction was not a proper basis for license revocation because a conviction used to disqualify a licensee must be related to promoting honesty in the conduct of the Lottery and K.J.L.'s conviction did "not involve any fraud, dishonesty, gambling, or any other matters even arguably related to the Lottery." Based on testimony and documentary evidence at the hearing, the ALJ found that K.J.L. had undergone intensive therapy over a four year period, had been employed as the manager of a Denver area convenience store during this time while serving his sentence of probation, and was an outstanding employee whose character was "trustworthy, honest and disciplined." K.J.L.'s daughter testified that a normal father/daughter relationship had been established.[4] In light of all the evidence, the ALJ found that the Division had failed to prove that Q & T was unfit to continue holding the licenses and concluded that K.J.L.'s "prior conviction [did] not form an appropriate basis for revocation of Q & T's lottery license."

The Director, nevertheless, issued an order revoking Q & T's three licenses. The Director concluded that a child sexual assault conviction "does bear a relationship to the Lottery operation as we are responsible for maintaining and protecting the public interest and trust in the Lottery." The Director determined that the Agency was barred from, or need not consider, any evidence of K.J.L.'s or Q & T's character and reputation

---

**3.** Section 24–35–206(4)(e), (h), and (i), provide that:

> (4) Licensed sales agents may include persons, firms, associations, or corporations, profit or nonprofit, but the following are ineligible for any license as a sales agent:
>
> . . . .
>
> (e) *Any person who is not of good character and reputation, notwithstanding the provisions of section 24–5–101, in the community in which he resides;*
>
> . . . . .
>
> (h) Any organization in which a person defined in paragraph (b), (c), (d), (e), or (f) of this subsection (4) is an officer, director, or managing agent, whether compensated or not; or
> (i) Any organization in which a person defined in paragraph (b), (c), (d), (e), or (f) of this subsection (4) is to participate in the management or sales of lottery tickets or shares.
> (Emphasis added.)

**4.** In his Initial Decision, the ALJ found that the management at Conoco, where K.J.L. worked as a store manager, was aware of K.J.L.'s arrest, conviction, and probation when it hired him, and placed him in a position which involved "regular handling of money as well as business management." The ALJ found that "no evidence was presented that K.J.L. had, "at any time, been charged with or convicted of any offense involving fraud or dishonesty or any gambling-related offense or that he has ever committed any acts of fraud or dishonesty or any gambling-related offenses." In fact, Conoco considered him an "outstanding employee" and it "frequently sent [him] to 'problem' stores within the chain." At the hearing, K.J.L.'s daughter testified on his behalf, stating that in the two years that they have both resided in the same city, they have worked through their problems and have developed a normal father/daughter relationship. She also testified that she now cherished her relationship with her father, confided in him, and asked his advice on personal issues.

other than K.J.L.'s conviction and the circumstances surrounding it.[5] As required by section 24–35–206(3), 10A C.R.S. (1988), the Director submitted his decision for approval or disapproval by the three-member Felony Review Panel, which consists of the chairman of the Lottery Commission, the executive director of the department of revenue, and the secretary of state. The Panel adopted the Director's final revocation order, without modification, by means of a summary "Final Agency Order," reciting that "[t]he Lottery Director's Final Order is hereby incorporated into this Final Agency Order by reference."

Following K.J.L.'s resignation from Q & T pursuant to the stipulation of the parties, judicial review of the Agency action was commenced under section 24–4–106(7), 10A C.R.S. (1988). Upholding the license revocation, the district court determined that: (1) the Director had demonstrated K.J.L.'s lack of good character by reason of the felony conviction; (2) the Director properly acted to revoke the lottery sales agent licenses; (3) the Director need not consider evidence of K.J.L.'s rehabilitation; and (4) the term "good character" was not unconstitutionally vague and ambiguous.

The court of appeals reversed the trial court, under section 24–4–106(7), in an opinion which determined that the Agency license revocation order was arbitrary and capricious because the Agency had not sustained its burden of proof in the revocation proceeding, the Director's decision was not supported by substantial evidence based on the record as a

whole, and the agency action was not in accord with its statutory authority. We agree. The court of appeals further found K.J.L. to be a person of good character and reputation in the community and ordered reinstatement of the three licenses. The court of appeals exceeded its authority when it made this finding and ordered reinstatement. Its judicial role was fulfilled when it determined that this license revocation proceeding could not be sustained on appeal. We remand the case with directions that the Division determine Q & T's license status consistent with the standards set forth in this opinion.

## II.

This appeal involves the proper construction and application of the Lottery statute, §§ 24–35–201 to –220, 10A C.R.S (1988 & 1996 Supp.), and the State Administrative Procedure Act, §§ 24–4–101 to –108, 10A C.R.S. (1988 & 1996 Supp.) (APA).

## A.

The Director accepted the ALJ's findings of evidentiary fact. Accordingly, no issue is raised which would require us to search the record to ascertain whether those findings are supported by substantial evidence in the record, see *Adams County Sch. Dist. No. 50 v. Heimer*, 919 P.2d 786, 794 (Colo.1996). Our inquiry shifts to whether the Director's decision, as affirmed by the Felony Review Panel, was arbitrary or capricious. *Id.*

5. The Director's order reads, in full, as follows:

 After reviewing the Initial Decision of the Administrative Law Judge, I recommend the license be revoked for Q & T Food Stores, Inc., # 039393, # 080455, and # 013233.

 In the Initial Decision the findings of fact are accepted as is, but I have a different opinion as to the *Decision and Conclusions of Law.*

 1. Sexual assault on a child is a public matter and a reflection of lack of good character. If I accepted the Initial Decision I would not be protecting the public interest and trust in the Lottery as per § 24–35–206(1).

 2. Pursuant to § 24–35–206(4)(e) the Lottery does not have to consider rehabilitation as did the Administrative Law Judge. There is no

doubt that a serious crime was committed and that there will be a long term damaging effect on the victim.

 It is clear to me, that this offense does bear a relationship to the Lottery operation as we are responsible for maintaining and protecting the public interest and trust in the Lottery. It appears that the community does not know of [K.J.L.'s] conviction, however if it were to become public knowledge, I believe the Lottery would suffer and lose the public trust and confidence that we have worked for 10 years to maintain.

 In conclusion I revoke this license in order to serve the interest of the public and the integrity of the Lottery.

■ The APA is applicable to lottery sales agent licensure and revocation proceedings by reason of section 24–35–206(3) of the Lottery statute and the general rule that the APA is applicable to state agency action in the absence of a statutory provision negating its application. *See Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.*, 919 P.2d 212, 216 (Colo.1996). Hence, as proponent of the revocation order, the agency had the burden of proof in the quasi-judicial proceeding. § 24–4–105(7).

The Lottery statute, section 24–35–206(2),[6] contains specific provisions dealing with revocation, suspension, or non-renewal of a sales agent license. Under these provisions, a license "shall be revoked" if a person has provided false or misleading information to the division, has been convicted of any gambling-related offense, has endangered the security of the lottery, has intentionally refused to pay a prize in his possession to a person entitled to receive the prize, or has become a person whose character is no longer consistent with the protection of the public interest and trust in the lottery. § 24–35–206(2)(a)(I)–(V).

A license "may be suspended, revoked, or not renewed" for change of business location, insufficient sales volume, delinquency in remitting money owed to the lottery, endangering the efficient operation of the lottery, violation of the Lottery statute or a rule or regulation adopted pursuant thereto, or conviction of a felony. Thus, the Lottery's honesty, efficient operation, financial integrity, and the sales and prize award record of the licensee are the primary focus in a license revocation proceeding. These fundamental purposes of the Lottery statute are consistently repeated as a continuing theme of the Lottery statute.[7]

Here, the undisputed evidence in the administrative record is that K.J.L. was honest and possessed excellent managerial skills and that lottery sales at the three Montrose stores increased after his addition to Q & T's management. There was no issue raised regarding the proper accounting of lottery revenues for the three convenience stores, proper remittance of funds owed the state, or improper withholding of prizes due to winners.

■ The sole basis for the Agency's license revocation order was K.J.L.'s incest conviction in relation to the character fitness of Q & T to continue holding the three sales agent licenses.

■ We first examine the Lottery statute to ascertain which provisions apply to license revocation. The Director argues that the license ineligibility provision of section 24–35–206(4)(e) is applicable here. This section renders any person ineligible for a sales

---

**6.** Section 24–35–206(2), provides:
(2)(a) A license *shall be revoked upon a finding that the licensee:*
(I) Has provided false or misleading information to the division;
(II) Has been convicted of any gambling-related offense;
(III) Has endangered the security of the lottery;
(IV) Has become a person whose character is no longer consistent with the protection of the public interest and trust in the lottery; or
(V) Has intentionally refused to pay a prize in his possession to a person entitled to receive the prize under this article.
(b) A license *may be suspended, revoked, or not renewed for any of the following causes:*
(I) A change of business location;
(II) An insufficient sales volume;
(III) A delinquency in remitting money owed to the lottery;
(IV) The endangering of the efficient operation of the lottery;
(V) Any violation of this part 2 or any rule or regulation adopted pursuant to this part 2; or
(VI) *Conviction of any felony.*
(Emphasis added.)

**7.** It is clear that an underlying theme of the Lottery sales agent relationship is the protection of the financial integrity of the lottery. Section 24–35–206(5) requires each licensed sales agent to "keep a complete set of books of account, correspondence, and all other records necessary to show fully the lottery transactions of the licensee." The licensed sales agent is to furnish this data to the Division to show proper administration of the requirements of the Lottery statute. If deemed necessary, the Division may require an audit of the books by an auditor selected by the Lottery Commission or the Director.

agent license "who is not of good character and reputation, notwithstanding the provisions of section 24–5–101, in the community in which he resides." We reject this argument. In a *revocation, suspension, or non-renewal action,* the applicable statutory provisions are contained in another portion of the Lottery statute, section 24–35–206(2). The mandatory provision for revocation on the basis of lack of character provides that "[a] license shall be revoked *upon a finding* that the licensee ... *[h]as become* a person whose character is no longer consistent with the protection of the public interest and trust in the lottery." § 24–35–206(2)(a)(IV) (emphasis added).[8] The ALJ found that K.J.L., and Q & T by attribution, did *not* lack the requisite character to continue holding the three licenses for lottery sales purposes.

We disagree with the Director's selection and interpretation of section 24–35–206(4) as the applicable provision, for additional reasons. First, this provision applies to obtaining a license; however, Q & T had already obtained its licenses; and this provision has always dealt with revocation, not issuance. Second, section 24–35–206(2)(b) plainly provides that, in the suspension, revocation, or non-renewal of a license, conviction of a felony is a discretionary, not a mandatory, basis for Agency license action. Third, that part of section 24–35–206(4)(e) which states that a license can be denied "notwithstanding section 24–5–101" is not contained in the revoca-

tion provisions. Under the ordinary rule of statutory construction requiring us to give effect to the plain meaning of a statute's wording, *Heimer,* 919 P.2d at 790, this omission must be viewed as intentional and given effect. Fourth, the "notwithstanding" reference in the licensure provisions does not mean that section 24–5–101 can never be utilized as consideration in sales agent licensing proceedings but, rather, that the Agency may deny a license for sufficient articulated reasons, in accordance with the Lottery statute and implementing regulations, *despite*[9] the state's general policy of allowing convicted rehabilitated felons to hold state issued licenses.

■ We are required to give effect to all acts of the legislature, if possible, unless a preemptive conflict arises requiring application of one provision over another. *See* § 2–4–205, 1B C.R.S. (1980). Before the Agency may decide to override the otherwise applicable state policy relating to rehabilitated felons, it must attempt to give effect to that policy but may determine, for reasons of the Lottery in a particular instance after a quasi-adjudicatory proceeding, that this policy should not be given effect. Section 24–5–101 embodies the generally applicable policy of the state of Colorado that convicted felons who have served their sentences and are rehabilitated may be granted business and occupational licenses.[10] Contrary to the argument of the Director that rehabilitation

8. In contrast to the licensure provisions of § 24–35–206(4)(e), the revocation provisions of this section do not employ the "reputation" factor; thus, we have no occasion here to construe or apply this term.

9. Webster defines the term "despite" as "notwithstanding," "without deterrence or prevention by," and "in spite of." *Webster's Third New International Dictionary* 614 (3d ed.1986). The term "notwithstanding" is defined as "in spite of," "nevertheless," and "without prevention or obstruction from or by." *Id.* at 1545. The two terms are often used interchangeably.

10. Section 24–5–101, 10A C.R.S. (1996 Supp.) provides:

*Effect of criminal conviction on employment rights.* Except as otherwise provided by section 4 of article XII of the state constitution,

and except for the certification and revocation of certification of peace officers as provided in section 24–31–305, the fact that a person has been convicted of a felony or other offense involving moral turpitude shall not, in and of itself, prevent him from ... applying for and receiving a license ... required by the laws of this state to follow any business, occupation, or profession. Whenever any state or local agency is required to make a finding that an applicant for a license ... is a person of good moral character as a condition to the issuance thereof, the fact that such applicant has, at some time prior thereto, been convicted of a felony or other offense involving moral turpitude, and pertinent circumstances connected with such conviction, shall be given consideration in determining whether, in fact, the applicant is a person of good moral character at the time of the application. The intent of this section is to expand employment opportunities for persons

evidence need not be taken into account in determining the requisite character to hold a sales agent license, the legislature has twice provided in the Lottery statute, first, in the revocation provisions of section 24–35–206(2)(b)(VI), and second, in the licensure provisions of section 24–35–206(4.5)(a), that a felony conviction is a discretionary, not a mandatory, basis for agency action in license proceedings.

■ Prior to a 1985 amendment to the Lottery statute, felony conviction was a mandatory basis for license denial and revocation. *See* ch. 201, secs. 1, 2, § 24–35–206, 1985 Colo. Sess. Laws 834, 834–35. Under present law, felony conviction of a gambling-related offense or crime involving misrepresentation continues to be a mandatory basis for denying a sales agent license, § 24–35–206(4)(b) & (f), thereby highlighting the legislature's focus on keeping the Lottery honest as the keystone to the public interest and trust it desired to forward. When the felony conviction is not based on one or more of the mandatory disqualification factors, rehabilitation evidence is relevant. In appropriate circumstances despite such evidence, the Agency may ultimately determine, based on articulated criteria under the Lottery statute, to deny, revoke, suspend, or not renew the license. The creation of the Felony Review Panel by the General Assembly demonstrates that body's intention, when a felony is a discretionary basis for agency action, to provide for considering and determining whether a felony conviction should be a license disabling factor under the Lottery statute. *See* § 24–35–206(3).

■ The Director did not actually consider K.J.L.'s and, by attribution, Q & T's character as it existed at the time of the license revocation. The focus of the inquiry should have been on the management and operation of the three convenience stores in regard to lottery sales. Instead, the Director focused on the effect of the crime on the victim and on potential criticism of the Agency, should it

allow Q & T to continue holding the sales agent licenses:

> There is no doubt that a serious crime was committed and that there will be a long term damaging effect on the victim. . . .

> It appears that the community does not know of [K.J.L.'s] conviction, however if it were to become public knowledge, I believe the Lottery would suffer and lose the public trust and confidence that we have worked for 10 years to maintain.

At the time of K.J.L.'s conviction, there was no state requirement for registration of sex offenders in the resident community. This provision was introduced by section 18–3–412.5, 8B C.R.S. (1996 Supp.), and was effective for convictions occurring on or after July 1, 1994.

■ The Agency had the burden of proof in the revocation proceeding to demonstrate that the licensee had become a person whose character was no longer consistent with the protection of the public interest and trust in the Lottery. As noted above, the fundamental aspects of this interest and trust are the honesty, efficient operation, financial integrity, sales volume, and prize awarding record of the stores that are lottery licensed agents. Because the Division considered K.J.L.'s conviction to be a sufficient ground for revocation, it presented no other character evidence. The ALJ found, on the basis of the evidence, that K.J.L., and Q & T by attribution, possessed the requisite character to continue the licenses in effect.

B.

■ When the Lottery statute is examined for its intent and effect, it is evident that the General Assembly desired to exclude from licensure any persons who are or were involved with illegal gambling, fraud, misrepresentation, and other aspects of dishonest or suspect practices. Elevating the Lottery above any suspicion of corruption was the

---

who, notwithstanding the fact of conviction of an offense, have been rehabilitated and are

ready to accept the responsibilities of a law-abiding and productive member of society.

primary legislative focus. We have recently enunciated in *Lorenz v. State,* 928 P.2d 1274, (Colo.1996), that in the arena of Colorado licensed gaming the General Assembly acted to avoid, and root out, both the existence and the appearance of conflicts of interest, dishonesty, corruption, and other forms of taint that have historically been associated with illegal gambling. We said that:

> Limited gaming is legal in Colorado; however, it is still suspect in our society. We agree that gambling has a potentially corruptive effect on government and that the State therefore has a substantial interest in regulating the relationship between local politics and the gaming industry. We also believe that the State has a substantial interest in avoiding the appearance of corruption.

*Id.* at 1282. Equivalent concerns are at the heart of the "character" and "felony conviction" license disqualification provisions of the Lottery statute. There is ample authority in this statute for the Division to exercise its license authority to keep the Lottery honest, efficient, and financially whole.

 We must presume that the legislature, in enacting this statute, intended a just and reasonable result. § 2–4–201(1)(c), 1B C.R.S. (1980). We must construe the statute as a whole "so as to give consistent, harmonious, and sensible effect to all its parts," *People v. Andrews,* 871 P.2d 1199, 1201 (Colo.1994), and, if possible, give effect to every word in the statute, *Charlton v. Kimata,* 815 P.2d 946, 949 (Colo.1991). The ALJ was correct in determining that the perceived character disqualification must reasonably relate to the purposes of the Lottery as articulated by the Lottery statute itself. We have said that use the of character standards in license and license revocation proceedings may be upheld if they bear a "reasonable relationship to the qualifications to engage in that activity." *City of Colorado Springs v. 2354 Inc.,* 896 P.2d 272, 288 (Colo. 1995). Gambling-related convictions are a proper basis for denial of a limited gaming license. *See DeMarco v. Colorado Ltd. Gaming Control Comm'n,* 855 P.2d 23, 26 (Colo.App.1993). In *R & F Enterprises v. Board of County Commissioners,* 199 Colo. 137, 142–43, 606 P.2d 64, 67–68 (Colo.1980), we held that a prostitution offense was a proper basis for license revocation of a massage parlor.

 Here, K.J.L.'s felony conviction was utilized by the Division as a character disability to justify license revocation. When a non-gambling, non-misrepresentation felony conviction is utilized for this purpose, the exercise of the Agency's sound discretion in the matter of revocation must involve the Agency's demonstration that the offense reasonably relates to the qualifications articulated by the statute and applicable implementing regulations for continuing to engage in the activity of being a lottery sales agent.

While the Lottery Commission has express power under the Lottery statute to adopt criteria by regulation relating to the requisite character requirements applicable to licensure actions, the Commission has not done so. The statute provides that the Commission has authority to adopt regulations for use by the Lottery Director in issuing, suspending, revoking, and renewing lottery licenses. § 24–35–206(1). Such rules and regulations are to include requirements pertaining to the character of the licensee:

> Licensing rules and regulations shall include requirements relating to the financial responsibility of the licensee, the accessibility of the licensee's place of business or activity to the public, the sufficiency of existing licenses to serve the public interest, the volume of expected sales, *the character of the licensee,* the security and efficient operation of the lottery, the licensed agent recovery reserve ... and other matters *necessary to protect the public interest and trust in the lottery* and *to further the sales of lottery tickets or shares.*

§ 24–35–206(1) (emphasis added).

The APA requires that licensing decisions of state agencies shall be based on stated criteria:

> (2) Every agency decision respecting the grant, renewal, denial, revocation, suspen-

sion, annulment, limitation, or modification of a license shall be based solely upon the stated criteria, terms, and purposes of the statute, or regulations promulgated thereunder, and case law interpreting such statutes and regulations pursuant to which the license is issued or required.

§ 24–4–104(2).

■ Rulemaking is the preferred means for delineating more specific criteria to guide the exercise of agency quasi-adjudicatory discretion. *See Elizondo v. Colorado Dep't of Revenue,* 194 Colo. 113, 570 P.2d 518 (1977). Here, the Agency has simply incorporated into its regulations the statutory language that a person is ineligible to hold a license if he is "not of good character and reputation, notwithstanding the provisions of C.R.S., 24–5–101, in the community in which he resides." [11]

■ In such a circumstance, we might remand for rulemaking proceedings, as we did in *Elizondo.* However, we have held that detailed regulations are not required when: (1) a standard of reasonableness is applicable to the agency's quasi-adjudicatory determination; (2) there is sufficient statutory guidance for the agency decisionmaking; (3) the agency holds a hearing to receive and consider pertinent evidence; and (4) the decisionmaker articulates the basis for its determination sufficient for judicial review to occur. *See Douglas County Bd. of Comm'rs v. Public Utils. Comm'n,* 829 P.2d 1303, 1311–13 (Colo.1992).

■ Agency decisionmaking must demonstrate the use of: (1) sufficient standards ensuring rational and consistent results in the application of the statute and implementing regulations to individual agency actions; and (2) adequate procedural safeguards, determination, and a record enabling judicial review. *Orsinger Outdoor Advertising, Inc. v. Department of Highways,* 752 P.2d 55, 62 (Colo.1988).

■ Q & T urges that we find the use of "character" in the Lottery statute and by the Director, in this case, to be without delineation and thereby, void for vagueness. However, we conclude that the Lottery statute provides sufficient standards and safeguards, *see Cottrell v. City & County of Denver,* 636 P.2d 703, 709 (Colo.1981), by: (1) providing criteria in the Lottery statute for use by the Division regarding issuance, denial, suspension, or revocation of lottery sales agent licenses; (2) providing for an inquiry into the criminal history of an applicant to ensure the protection of the public interest and trust in the honest, efficient, and financially sound operation of the Lottery; (3) authorizing the Division to establish rules and regulations to provide additional specificity to supplement the Lottery statute in accordance with its provisions; (4) providing for an evidentiary hearing for denial, revocation, suspension, or non-renewal of a license; and (5) requiring an articulated determination based on evidence in the record which is subject to judicial review thereof.

■ License revocation can occur only as a result of a proper quasi-adjudicatory proceeding when a licensee invokes the procedural and substantive protection to which the licensee is entitled under applicable law. Throughout the proceeding, the Division relied only on the existence of K.J.L.'s felony conviction.[12]

■ Pursuant to section 24–4–106(7), agency action may be set aside if it was

---

11. Rule 2.2 e) 5) states that "[a]ny person who is not of good character and reputation, notwithstanding the provisions of C.R.S., 24–5–101, in the community in which he resides." Rule 2.2 e) 5), 1 C.C.R. 206–1 (1993).

12. The following testimony was given by the state's only witness at the license revocation hearing:

Q Your decision to seek revocation is based upon the fact that [K.J.L.] is not now of good character; is that correct, as we sit here today?

A Yes.
Q But you don't know that?
A No.

Q You don't know what kind of a person he is?
A Other than what is in the record, no.
Q You don't know what kind of a person [K.J.L.] is on this day, February the 4th, 1992; do you?

arbitrary or capricious, beyond the scope of the agency's authority, without substantial evidence based upon the record as a whole or otherwise not in accordance with the law. *See Dolan v. Rust,* 195 Colo. 173, 175–76, 576 P.2d 560, 562 (1978). Whether the decision is supported by substantial evidence is a question of law. *Integrated Network Servs., Inc. v. Public Utils. Comm'n,* 875 P.2d 1373, 1378 (Colo.1994). Section 24–4–106(7) provides broad parameters for judicial review of state agency final determinations. *See Colorado Dep't of Revenue v. District Court,* 802 P.2d 473, 477 (Colo.1990).

 Under the Lottery statute, a non-gambling, non-misrepresentation felony conviction, in appropriate statutory context, may be considered in the course of determining whether the person lacks the requisite character to be accepted or continued as a license agent. The Felony Review Panel's role in the process is to review and approve or reject the Director's determination when a felony conviction is involved:

> When a felony conviction or a conviction involving fraud is an issue in the issuance, suspension, revocation, or renewal of a lottery sales agent's license, the director's determination shall be submitted to a three-member panel who shall approve or reject such determination.

§ 24–35–206(3). This provision demonstrates that a felony conviction is *not per se* grounds for disqualification. Rather, the Agency is to exercise sound discretion based on the record of the quasi-judicial proceedings. These license revocations must be set aside because the agency applied the wrong standard and based its order solely on the existence of K.J.L.'s incest conviction.

A I have my opinions but if you are talking surety, no, I don't.
Q What your opinions would be based on nothing other than the pieces of paper in front of you?
A That is correct.
Q No personal knowledge of the man or who he is today?
A That is correct.
Q As far as you know he could be a saint today and you wouldn't know it?

### III.

Accordingly, under section 24–4–106(7), the decision of the court of appeals setting aside revocation of Q & T's lottery sales agent licenses in this proceeding is affirmed. We set aside the court of appeals determination that K.J.L. is a person of good character and reputation in the community and that Q & T's licenses must be reinstated. We remand this case to the court of appeals with directions that the district court return this case to the Division for determination of Q & T's license status consistent with the standards set forth in this opinion.

VOLLACK, C.J., does not participate.

A I am not sure.
Q So, your total investigation, your total decision to seek revocation is based on incidents that occurred nearly eight years ago; correct? A conviction that occurred six and a half years ago?
A That is correct.
Q And nothing that has occurred since that time?
A That is correct.