The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 31, 2020

## 2020COA175

**No. 18CA1001, *People v. Hayes* — Vehicles and Traffic —
Registration, Taxation, and License Plates**

A division of the court of appeals considers whether section

42-3-203(3)(d)(1), C.R.S. 2020, requires affixing a temporary license

plate in the same location as a permanent rear license plate as

required by section 42-3-202(2)(a)(II)(A) to -(E), C.R.S. 2020. The

division concludes that it does.

COLORADO COURT OF APPEALS                                    **2020COA175**

Court of Appeals No. 18CA1001
Pueblo County District Court No. 17CR2034
Honorable William D. Alexander, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Andrew James Hayes,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE BERGER
J. Jones, J., concurs
Pawar, J., specially concurs

Announced December 31, 2020

Philip J. Weiser, Attorney General, Gabriel P. Olivares, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Meredith E. O'Harris, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Andrew James Hayes, appeals his convictions for possession of a controlled substance and possession of drug paraphernalia.  His only contention on appeal is that the trial court erred by denying his motion to suppress physical evidence found on his person during a booking search following a traffic stop.

¶ 2     As a matter of first impression, we hold that section 42-3-203(3)(d)(I), C.R.S. 2020, read in conjunction with section 42-3-202, C.R.S. 2020, requires affixing a vehicle's temporary plate[1] in the same location as a permanent rear license plate.  Because the car in which Hayes was riding did not have a temporary plate in the required location, the officer who stopped the car had reasonable suspicion to make and continue the stop.  That holding requires us to reject Hayes's Fourth Amendment challenge and affirm his convictions.

## I.     Background

¶ 3     A police officer stopped the car in which Hayes was a passenger.  The initial basis for the stop was that the officer could

---

[1] Section 42-3-203 uses the terms "temporary registration number plates," "temporary license plates," and "temporary plates" interchangeably.  For clarity, we use the term "temporary plate."

not see either a license plate or temporary plate on the car. After he stopped the car, the officer saw a temporary plate in the rear window. The officer asked the driver and passengers for their names and other identifying information.[2] A warrant check disclosed outstanding arrest warrants for Hayes.

¶ 4    The officer arrested Hayes on the warrants and took him to jail. During booking, another officer found, in Hayes's pocket, a plastic bag containing methamphetamine. As a result of this discovery, the prosecution charged Hayes with possession of a controlled substance.[3]

¶ 5    Hayes moved to suppress the evidence, claiming that the officer lacked reasonable suspicion to continue the encounter after he saw the temporary plate on the car and that the drug evidence was fruit of the unlawful stop. According to Hayes, the moment the

---

[2] Apart from his claim that the continued stop violated the Fourth Amendment, Hayes does not challenge on appeal the right of the officer to request this information.

[3] At trial, the defense tendered an instruction on the lesser nonincluded offense of unlawful possession of drug paraphernalia, and the jury convicted him of both the greater and lesser nonincluded offenses. *See People v. Wartena*, 2012 COA 12, ¶ 36.

officer saw the temporary plate, the officer was required to discontinue the stop.

¶ 6     After an evidentiary hearing, the trial court ruled that the officer had reasonable suspicion to continue the stop even after he saw the temporary plate in the rear window because the temporary plate was not in the location required by law. Alternatively, the court denied the suppression motion in reliance on the attenuation doctrine because of the outstanding arrest warrants.

## II.     Analysis

### A.     Standard of Review and Issue Preservation

¶ 7     Review of a trial court's suppression order is a mixed question of law and fact. *People v. Tomaske*, 2019 CO 35, ¶ 7. We defer to trial court findings of fact that are supported by competent evidence in the record and therefore are not clearly erroneous. *People v. Carrion*, 2015 CO 13, ¶ 8. We review questions of law de novo. *Tomaske*, ¶ 7.

### B.     Reasonable Suspicion

¶ 8     The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution prohibit unreasonable searches and seizures.

¶ 9    "Generally speaking, warrantless searches violate constitutional guarantees because they are presumptively unreasonable.  When police obtain evidence in violation of the Fourth Amendment, the exclusionary rule ordinarily bars the prosecution from introducing that evidence against the defendant in a criminal case." *People v. Vaughn*, 2014 CO 71, ¶ 10 (citations omitted).

¶ 10   However, there are exceptions to the warrant requirement. One exception is that an officer may make an investigative stop when there is reasonable suspicion.  *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Stone v. People*, 174 Colo. 504, 508, 485 P.2d 495, 497 (1971).

> An investigatory stop, including a traffic stop, does not violate the Fourth Amendment's protections when there are specific, articulable facts that give rise to an officer's reasonable suspicion of criminal activity.  In the context of traffic stops, an officer need only have a reasonable suspicion of a traffic violation — i.e., an objectively reasonable basis to believe that a driver has committed a traffic offense — in order to pull the driver over.

*Vaughn*, ¶ 11 (citations omitted).

¶ 11    Hayes contends that the stop was pretextual and that the officer made the stop because he thought the odds of finding an outstanding arrest warrant were high.  However, an officer's subjective intent is not relevant to the determination of whether reasonable suspicion exists.  *People v. Cherry*, 119 P.3d 1081, 1083 (Colo. 2005).  Rather, reasonable suspicion is determined by looking at the articulable facts known to the officer.  *Id.*

¶ 12    The United States Supreme Court has held that a traffic stop constitutes a seizure of "everyone in the vehicle, not just the driver." *Brendlin v. California*, 551 U.S. 249, 255 (2007).  Hayes, a passenger in the car, was therefore seized when the officer stopped the car.

¶ 13    At the suppression hearing, the officer testified that he stopped the car because he did not see a license plate or temporary plate on the car.  The trial court credited this testimony and concluded that that the initial stop was supported by reasonable suspicion.  The trial court also found, contrary to some of the officer's testimony, that after the stop was made, the officer could and did see a temporary plate that contained the statutorily required content.  But the trial court concluded that the temporary

plate was not affixed on the vehicle in the location required by law. Accordingly, the court ruled that the officer was justified in continuing the stop even after he saw a temporary plate. And once the officer discovered the outstanding arrest warrants, there was probable cause for Hayes's arrest. *See People v. Gouker*, 665 P.2d 113, 116 (Colo. 1983).

¶ 14    Relying on *People v. Redinger*, 906 P.2d 81, 84 (Colo. 1995), Hayes contends that the moment the officer saw the temporary plate any lawful stop ended and the continuing stop violated the Fourth Amendment. In a case similar to *Redinger*, the Tenth Circuit held that once the officer was able to read the temporary plate, any suspicion that the defendant had violated the license plate statute dissipated and the stop was no longer supported by reasonable suspicion. *United States v. Edgerton*, 438 F.3d 1043, 1051 (10th Cir. 2006).

¶ 15    But in both *Redinger* and *Edgerton*, there was no issue regarding the *location* of the temporary plate. Indeed, after *Redinger* was decided, the General Assembly amended the temporary plate statute, addressing the required location of temporary plates.

¶ 16     The question presented here is whether the law in effect at the time of the stop required the temporary plate to be affixed in the same *location* required for a rear license plate.  If, as the trial court concluded and the Attorney General contends, a temporary plate must be affixed in the same location as a rear license plate, the officer was justified in continuing the stop, and the later discovery of the arrest warrants and the drugs did not violate the Fourth Amendment.

## C.     Statutory Interpretation

¶ 17     Statutory interpretation is a legal question that we review de novo.  *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010).  When interpreting a statute, we first look at its plain language.  *Id.*  When the plain language is clear, our job ends, and we must apply the statute as written.  *Id.*

¶ 18     One of the relevant statutes, section 42-3-203(3)(d)(I), provides:

> By July 1, 2016, the department shall make temporary registration number plates or certificates *so that each complies with the requirements of section 42-3-202, including being fastened, visible, and readable*; except that a temporary plate is affixed only to the rear of the vehicle.  The department shall

implement an electronic issuance system for temporary license plates. The department may promulgate rules to implement this system.

(Emphasis added.)

¶ 19    This statute requires temporary plates to comply with the requirements of section 42-3-202. That statute contains specific requirements for the fastening of a rear license plate:

> (A) Horizontal at a height not less than twelve inches from the ground, measuring from the bottom of the plate;
> (B) In a place and position to be clearly visible;
> (C) Maintained free from foreign materials and clearly legible;
> (D) At the approximate center of the vehicle measured horizontally; and
> (E) Mounted on or within eighteen inches of the rear bumper.

§ 42-3-202(2)(a)(II).

¶ 20    Hayes argued below and renews his argument here that the words "including being fastened, visible, and readable" in the temporary plate statute, section 42-3-203(3)(d)(I), implies the exclusion of all other requirements, such as the required location of the temporary plate. We reject this argument because the word "including" is ordinarily used as a word of enlargement rather than limitation. C*herry Creek Sch. Dist. No. 5 v. Voelker by Voelker*, 859 P.2d 805, 813 (Colo. 1993).

¶ 21    The express language of section 42-3-203(3)(d)(I) requires that temporary plates must "compl[y] with the requirements of section 42-3-202," *id.*, which specifies the location of a rear license plate. In our view, the only reasonable reading of these statutory provisions is that temporary plates must be fastened in the same location as the permanent rear license plate. This includes the requirements violated here — that the temporary plate be centered and within eighteen inches of the bumper. § 42-3-202(2)(a)(II)(D), (E).

¶ 22    While it is true, as the concurring opinion states, that the initial portion of section 42-3-203(3)(d)(I) appears to require action only by the Department of Revenue (Department), the language contained in section 42-3-202(2)(a)(II), regarding the required location of rear license plates cannot reasonably be read to impose obligations solely on the Department. The Department does not affix license plates to vehicles. The two statutes, read together, specify the required location of rear plates and, by extension, temporary plates.

¶ 23    Construed together, these statutes impose the obligation on owners and operators of motor vehicles to affix temporary plates in

9

the manner stated in section 42-3-202(2)(a)(II). To read these statutes otherwise would require us to ignore substantial portions of the statutes, which we are not permitted to do. *See People v. Dunaway*, 88 P.3d 619, 628 (Colo. 2004). Because this is the only reasonable construction of these statutes, we are not at liberty to consider legislative history. Rather, we apply the statute as written. *Smith*, 230 P.3d at 1189.

¶ 24     Because the officer did not see either a temporary plate or permanent license plate, he had reasonable suspicion to stop the car. The stop continued to be lawful even after the officer saw the temporary plate because it was not in the location required by law. Accordingly, the trial court correctly denied the suppression motion.[4]

### III.    Conclusion

¶ 25     The judgment of conviction is affirmed.

JUDGE J. JONES concurs.

JUDGE PAWAR specially concurs.

---

[4] Because we affirm the suppression order based on the plain language of the statute, we do not address the attenuation doctrine. *See People v. Cousins*, 181 P.3d 365, 372 (Colo. App. 2007).

JUDGE PAWAR, specially concurring.

¶ 26    I agree with the majority's ultimate conclusion that the display requirements for temporary registration number plates are the same as those for rear license plates. I write separately because I disagree that the plain language of the relevant statutes unambiguously compels this conclusion.

¶ 27    The majority concludes that "the express language" of the temporary registration number plate statute, section 42-3-203, C.R.S. 2020, requires a vehicle owner to display that number plate as described in section 42-3-202, C.R.S. 2020. I read section 42-3-202 differently. In my opinion, the express language of section 42-3-203 directs the Department of Motor Vehicles (DMV) how to make temporary registration number plates — it does not require a vehicle owner to do anything. I therefore conclude that the display requirements for temporary registration number plates are not evident from the plain language of either section 42-3-202 or section 42-3-203. Because the plain language is ambiguous, I resort to other tools of statutory construction to determine how the legislature intended temporary registration number plates to be

11

displayed.  Based on these other tools, I arrive at the same place as the majority.

## I.  Statutory Interpretation

¶ 28     Statutory interpretation is a question of law we review de novo. *People v. Iannicelli*, 2019 CO 80, ¶ 19.  Our primary task in construing a statute is to ascertain and give effect to the intent of the legislature.  *Id.*  To determine legislative intent, we look first to the plain language of the statute.  *Id.*  We must read and consider the statute "as a whole, giving consistent, harmonious, and sensible effect to all of its parts."  *Id.* at ¶ 20.

¶ 29     If the statutory language is clear and unambiguous, we must interpret the statute as written.  *Id.* at ¶ 21.  If, however, the statute is ambiguous, we may employ tools of statutory construction, including the statute's legislative history, to discern legislative intent.  *Id.*

## A.  Plain Language

¶ 30     Section 42-3-202(2)(a)(I)-(II) contains the display requirements for rear license plates:

> (I) The owner or driver of a motor vehicle shall securely fasten the license plate to the vehicle

12

to which it is assigned so as to prevent the plate from swinging.

(II) Except when authorized by this article 3 or rule of the department, *the rear license plate* must be:

> (A) Horizontal at a height not less than twelve inches from the ground, measuring from the bottom of the plate;
> (B) In a place and position to be clearly visible;
> (C) Maintained free from foreign materials and clearly legible;
> (D) At the approximate center of the vehicle measured horizontally; and
> (E) Mounted on or within eighteen inches of the rear bumper.

(Emphasis added.) These provisions clearly and unambiguously instruct owners and drivers of motor vehicles as to the proper location and placement of "rear license plates."

¶ 31    Separately, section 42-3-203(3)(d)(I) addresses temporary registration number plates:

> By July 1, 2016, the department shall make *temporary registration number plates or certificates* so that each complies with the requirements of section 42-3-202, including being fastened, visible, and readable; except that a temporary plate is affixed only to the rear of the vehicle. The department shall implement an electronic issuance system for temporary license plates. The department may promulgate rules to implement this system.

13

(Emphasis added.) This provision instructs the DMV on the proper creation of "temporary registration number plates or certificates." Although it mandates that the DMV shall make temporary registration number plates so that they *can* be displayed as described in section 42-3-202 (the rear license plate provision), nothing in section 42-3-203 instructs vehicle owners that they *shall* display temporary registration number plates in a certain way. Put differently, the plain language of section 42-3-203 tells the DMV how to make temporary registration number plates; it says nothing about how or where vehicle owners or drivers must display them.

¶ 32    Moreover, the plain language of the statutory scheme does not provide that "temporary registration number plates" are a type of "rear license plate" such that the display requirements for "rear license plates" would unambiguously apply to "temporary registration number plates." There is no statutory definition of "temporary registration number plates" or "rear license plates."

¶ 33    The majority states that reading ambiguity in the statutes as I do "would require us to ignore substantial portions of the statutes." But the majority does not identify, and I cannot discern, which

parts of the two statutes I am ignoring by reading the statutes as I do.

¶ 34    I therefore disagree with the majority that the plain language of the statutes unambiguously instructs vehicle owners and drivers to display temporary registration number plates in the same manner as rear license plates.  The plain language of the statutes directs the DMV how to make temporary registration number plates.  And it directs vehicle owners and drivers how to display rear license plates.  But the statutes do not make clear whether temporary registration number plates are a type of rear license plate, nor do the statutes separately instruct vehicle owners or drivers how to display temporary registration number plates.

¶ 35    Because the statutes are ambiguous about how to display temporary registration number plates, I must look beyond the plain language of the statutes to determine the legislature's intent.  I look first to the legislative history and other sections of the statute in an effort to give "consistent, harmonious, and sensible effect to all of its parts."  *See Iannicelli*, ¶¶ 20-21.  Lastly, I turn to the General Assembly's stated objectives in implementing amendments to the statutes.

15

## B. Legislative History

¶ 36    In 2015, the General Assembly substantially amended the license plate statutes to address statutory requirements for temporary registration plates. *See* Ch. 334, 2015 Colo. Sess. Laws 1358-61.

¶ 37    Before these amendments, section 42-3-202 provided for the proper placement of "number plates" on motor vehicles. *See* § 42-3-202(2)(a), C.R.S. 2014. And the DMV was permitted to "issue individual temporary registration number plates, tags, or certificates" to motor vehicle owners. § 42-3-203(3)(a)(I), C.R.S. 2014. Owners and drivers were not instructed by any statutory provision on where to mount "temporary registration number plates, tags, or certificates."

¶ 38    After the 2015 amendments, vehicle owners and drivers were instructed by section 42-3-202 to mount "the license plate to the vehicle" and that "each license plate" had to be

> (A) Horizontal at a height not less than twelve inches from the ground, measuring from the bottom of the plate;
> (B) In a place and position to be clearly visible;
> (C) Maintained free from foreign materials and clearly legible; and

16

(D) At the approximate center of the vehicle measured horizontally.

Ch. 334, sec. 2, § 42-3-202, 2015 Colo. Sess. Laws 1360. The "rear license plate" specifically had to be "mounted on or within eighteen inches of the rear bumper." *Id.*

¶ 39 Simultaneously, the 2015 amendments newly instructed the DMV to begin creating, on July 1, 2016, "temporary registration number plates or certificates so that each complies with the requirements of section 42-3-202, including being fastened, visible, and readable; except that a temporary plate is affixed only to the rear of the vehicle." Ch. 334, sec. 1, § 42-3-203(3)(d)(I), 2015 Colo. Sess. Laws 1359. Additionally, all references to "temporary registration number *tags*" were removed from section 42-3-203. *Id.* (emphasis added).

¶ 40 In 2018, the General Assembly further refined the requirements for mounting license plates under section 42-3-202. *See* Ch. 85, sec. 1, § 42-3-202, 2018 Colo. Sess. Laws 685-86. The statutes now provide distinct requirements for "rear license plate" and "front license plate" mounting. The requirements for rear license plates remain unchanged from 2015, § 42-3-202(2)(a)(II),

17

and front license plates must now be mounted horizontally on the front of the vehicle in a location designated by the manufacturer, § 42-3-202(2)(a)(III).

¶ 41     Also through the 2015 amendments, the General Assembly amended section 17-24-109.5, C.R.S. 2014 — the statute that instills in Colorado's division of correctional industries the authority to utilize inmates to create license plates.  The statute was amended to include "temporary registration number plates" among the types of license plates to be created by Colorado's division of correctional industries.  2015 Colo. Sess. Laws at 1359.  And "temporary registration number plates" is included *in addition to* "motor vehicle license plates, validating tabs or decals, road signs, markers, and metal badges."  2015 Colo. Sess. Laws at 1360-61.  But this only adds ambiguity to the interpretation of sections 42-3-202 and 42-3-203.  The amendment to section 17-24-109.5 indicates that "temporary registration plate" is distinct from, and not subsumed within, "license plate."  Consequently, because the General Assembly did not similarly include "temporary registration number plate" in addition to "rear license plate" in the amendments to section 42-3-202, it is reasonable to conclude that the omission was

18

intential. *Zamarripa v. Q & T Food Stores, Inc.*, 929 P.2d 1332, 1339 (Colo. 1997) ("Under the ordinary rule of statutory construction requiring us to give effect to the plain meaning of a statute's wording . . . [an] omission must be viewed as intentional and given effect."). Moreover, in connection with the 2018 amendments, the General Assembly did not add "temporary registration number plate" in addition to "rear license plate" to section 42-3-202. The omission could therefore indicate that the General Assembly did not actually intend to mandate that owners and drivers affix temporary registration number plates to vehicles in the same manner as permanent rear license plates.

### C. Stated Purpose of the 2015 Amendments

¶ 42     Lacking resolution, I turn finally to the General Assembly's stated purpose for the 2015 amendments to these statutes:

> The bill directs the department of revenue to ensure that temporary motor vehicle registration number plates, tags, or certificates meet the existing statutory requirements for attachment, visibility, and readability that apply to permanent plates. *This will result in a new type of plastic temporary registration plate that is affixed to the rear of the vehicle where permanent license plates are placed.* Two additional requirements are added to the placement of license plates: The plates must be

> located at the approximate center of the vehicle measured horizontally and the rear license plate must be mounted on or within 18 inches of the rear bumper.

S.B. 15-090, 70th Gen. Assemb., First Reg. Sess., Updated Bill Summary (Colo. 2015), https://perma.cc/ZGY4-QJX3 (emphasis added); *see also* Office of Legislative Legal Services, *2015 Digest of Bills Enacted by the Seventieth General Assembly* 113 (June 2015), https://perma.cc/5EQM-9J9Y ("This will result in a new type of plastic temporary registration plate that is affixed to the rear of the vehicle where permanent license plates are placed.").

¶ 43     Similarly, the summary of the legislation according to the bill's fiscal note indicates the following:

> The bill, as amended . . . requires that temporary motor vehicle registration plates and certificates meet the same statutory requirements regarding attachment, visibility, and readability as permanent plates, *except that a temporary plate is only required to be affixed to the rear of the vehicle.*

Legislative Council of the Colo. Gen. Assembly, Fiscal Note on S.B. 15-090, at 1 (Feb. 25, 2015) (emphasis added).

¶ 44     The General Assembly clearly articulated the purpose of the 2015 amendments in both the bill's summary and fiscal note.

20

Based on the General Assembly's stated objective, rather than the plain language of the statutes, it is clear to me that the General Assembly intended for vehicle owners and drivers to mount "temporary registration plate[s] . . . to the rear of the vehicle where permanent license plates are placed."

## II. Conclusion

¶ 45    Accordingly, I conclude — as the majority has — that temporary registration number plates must comply with the requirements for rear license plates under section 42-3-202(2)(a)(II), including that the temporary plate be centered and within eighteen inches of the bumper.

¶ 46    And consequently, because the car in which Hayes was a passenger did not display the temporary plate in the correct location, I agree with the majority's conclusion that the officer who stopped the car had reasonable suspicion to make and continue the stop.